YOUNGSTOWN SHEET & TUBE COMPANY, APPELLEE, *v.* KOSYDAR, TAX COMMR., APPELLANT.

(No. 75-38—Decided December 3, 1975.)

*Messrs. Porter, Stanley, Platt & Arthur* and *Mr. Roger F. Day,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mrs. Maryann B. Gall,* for appellant.

CORRIGAN, J. The appellant Tax Commissioner urges reversal of the Board of Tax Appeals' decision on the ground that the board erred as a matter of law in applying the standard of "generally accepted accounting principles" instead of the standard of "true value." Appellant maintains that R. C. 5711.16 and 5711.18 require the inclusion of depreciation in factory overhead when computing the value of a manufacturer's inventory for purposes of the Ohio personal property tax. The Tax Commissioner maintains further that his method of computing the "true value" of the inventory in question is in conformity with sound accounting principles.

The Tax Commissioner is correct in the assertion that "true value" is the ultimate test in the valuation of personal property pursuant to R. C. Chapter 5711. The decision of the Board of Tax Appeals does not, however, substitute "generally accepted accounting principles" for "true value" as the standard of valuation. R. C. 5711.18 recognizes the difficulty inherent in determining the "true value in money" of personal property. It provides that the book value of such property less book depreciation at that time shall be listed and taken as the true value of the property, "* * * unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money."

R. C. 5711.21 provides:

"In assessing taxable property the assessor shall be governed by the rules of assessment prescribed by Sections 5711.01 to 5711.36, inclusive, of the Revised Code. Wherever any taxable property is required to be assessed at its true value in money or at any percentage thereof, the assessor shall be guided by the statements contained in the taxpayer's return and such other rules and evidence as will enable the assessor to arrive at such true value. * * *"

R. C. 5711.18 and 5711.21, read in conjunction, clearly indicate that the taxpayer's determination of book value, taken from the books and records of the corporation kept

in the ordinary course of business of the corporation in accordance with any sound and generally recognized and approved accounting system, together with other statements of the taxpayer and other available evidence, are to be considered by the tax assessor and taken as the true value of taxable property unless the assessor finds that such book value is greater or less than the then true value in money. *National Tube Co.* v. *Peck* (1953), 159 Ohio St. 98; *R. H. Macy Co.* v. *Schneider* (1964), 176 Ohio St. 94.

Those statutory provisions, however, do not diminish the duty of the tax assessor to consider other competent evidence indicating that book value is greater or less than the then true value in money, nor do they imply that depreciated book value is the sole measure of true value. *Willard Storage Battery Co.* v. *Peck* (1954), 161 Ohio St. 197.

Generally accepted accounting principles and practices are merely evidence of value. The accuracy with which a particular accounting method reflects true value depends, to a degree, on the objectives of that method. Accounting Research Bulletin No. 43, Chapter 4, Statement 2, APB Accounting Principles, Volume II, page 6015, Commerce Clearing House, Inc. (1971), in discussing accounting for inventories, states as a major objective the proper determination of income through the process of matching appropriate costs against revenues. An accounting method which is accepted under certain circumstances as sound for the purpose of accurately reporting income may give rise to an unrealistic picture of inventory value. This was the case in *R. H. Macy Co.* v. *Schneider*, *supra* (176 Ohio St. 94), wherein this court affirmed the decision of the Board of Tax Appeals, holding that the retail price method of valuing inventory more accuratetly reflected the true value of a retail merchandiser's inventory than the LIFO (last in first out) method of accounting. The LIFO system of accounting is accepted for federal tax purposes when employed consistently. In some circumstances, particularly in periods of rising inflation, the

LIFO system may be the most accurate method of matching current costs with current revenues for purposes of determining income from operations. Amory and Hardee, Materials on Accounting (3 Ed. 1959), 193.

The *Macy* decision clearly indicates that "true value" is the ultimate goal of valuation of personal property, pursuant to R. C. 5711.18, and that accounting principles are merely methods or practices devised to reflect value for a variety of purposes. As such, accounting systems constitute evidence of value subject to the tax assessor's finding of a more accurate method of reflecting "true value." Accordingly, the proper accounting method of reflecting true value will vary according to the circumstances in a particular case. Book value, as determined by a particular accounting method, will be taken as prima facie evidence of "true value" only when the tax assessor has failed to find that book value is greater or less than the then true value; it is not a substitute for true value.

The instant case is a dispute between Youngstown and the Tax Commissioner as to the true value of the property in question.

The testimony of appellee's expert witness is that appellee, in determining the book value of its inventories of basic steel products held for resale in the ordinary course of business, included the cost of raw materials, the direct labor expended, and every cost normally considered as overhead or burden expended in the production of products for sale, except the element of depreciation on its plant and equipment.

Appellee's expert witness described "overhead" or "burden" as the various recognized indirect costs incurred by a manufacturer which do not add to, or are not readily identifiable with, the product or service produced. Such costs include insurance, utilities, taxes, supervisory salaries, maintenance, and depreciation. In determining the book value of its inventory, Youngstown excluded depreciation on its plant and equipment, treating such cost as a period or current expense, which expired in the period

in which it was recognized, and not as an indirect cost attributable to the product manufactured.

Depreciation is generally described as the mathematical allocation of the cost of the manufacturing facilities, which are assets, over the useful life of the asset. The Tax Commissioner maintained that the periodic allocation of depreciation should be included in the cost of the inventory produced by the machinery.

In justification for excluding depreciation in valuing its inventory, Youngstown presented the testimony of expert accounting witnesses to the effect that the treatment of depreciation as a period expense had become predominant in the steel industry due to the interrelationship of the high capital intensity of the steel industry and the cyclical nature of the business itself. It was explained that the investment in capital assets, i. e., machinery, equipment, etc., was high and that a great deal of lead time was required to produce these assets. Because the investment in fixed assets is higher than normal, the depreciation which is generated by these assets will be higher than normal. Additionally, the testimony of appellee's witnesses indicated that the steel industry is subject to cyclical fluctuations in the amount of steel produced. A witness stated that there is no relationship necessarily between the year of high capital expenditures and the production of steel. In a year of high capital expenditure, for example, steel production could be low and the depreciation attributable to the steel produced could be greatly overstated, and in a year of low capital expenditure and high steel production the opposite would hold true. Besides, the witness testified, environmental control procedures required by the federal government, which neither improve the quantity nor quality of the steel produced, do add to capital expenditures. All appellee's expert witnesses testified that the exclusion of depreciation under these circumstances was in accord with generally accepted accounting principles.

Appellant's witnesses, on the other hand, testified that

it was impermissibe to exclude depreciation from a steel manufacturer's inventory value.

The Tax Commissioner, in making the corrected assessment, applied a mathematical formula using the taxpayer's year-end figures in order to apportion depreciation and arrive at average values of inventories within taxing districts.

The taxpayer maintained that this formula effectively added depreciation from tax-exempt pollution control facilities and idle plant facilities to average inventory values contrary to legislative intent and accepted cost accounting principles. The Tax Commissioner's own witness testified that it was improper to add depreciation from idle facilities to the cost of the inventory goods produced. Additionally, the taxpayer contended that the formula improperly added a certain amount of depreciation to raw materials and to semi-finished goods produced outside Ohio. The taxpayer's witness testified, and the Tax Commissioner's own witness conceded, that depreciation should not be added to these types of inventory goods.

Appellee maintained further that, if any depreciation were to be allocated to semi-finished goods, the proper cost accounting practice would require depreciation to be allocated to semi-finished goods on the basis of their actual physical degree of completion and not by an arbitrary mathematical adjustment. Both the taxpayer's and Tax Commissioner's witnesses were in agreement with this contention.

Finally, the accounting experts of both parties were in agreement that, if depreciation from plant and equipment were to be added to the manufacturer's inventory of goods, it would be more accurate to compare the actual production of the plant to its capacity for production and not to include total depreciation in inventory value.

The Board of Tax Appeals, after considering all the evidence before it, determined that the appellee's method of inventory valuation comported with generally accepted accounting principles. It determined further from the evi-

dence and testimony that it was unable to declare that the method appellee used to value its inventory did not arrive at true value of the inventory, just as it was unable to declare that the Tax Commissioner's method of valuation did arrive at the true value of the inventory.

In appeals from the Board of Tax Appeals, this court's review is limited to a determination from the record as to whether the decision of the board is unreasonable or unlawful. *Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53.

The record in the present case contains sufficient probative evidence to support the Board of Tax Appeals' decision. Moreover, the board did not substitute an unlawful standard in determining the true value of the property in question. We hold, therefore, that the decision of the Board of Tax Appeals was reasonable and lawful, and the decision must be affirmed.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.