[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 242.]

CITY OF LANCASTER, APPELLANT, *v.* FAIRFIELD COUNTY BUDGET

COMMISSION ET AL., APPELLEES.

[Cite as *Lancaster v. Fairfield Cty. Budget Comm.*, 1998-Ohio-283.]

*Taxation—Income tax—Apportioning Undivided Local Government Fund and*
*Undivided Local Government Revenue Assistance Fund—Phrase "the*
*legislative authority of the city, located wholly or partially in the county,*
*with the greatest population" in R.C. 5747.53(A) and 5747.63(A),*
*construed.*

The phrase in R.C. 5747.53(A) and 5747.63(A), "the legislative authority of the
city, located wholly or partially in the county, with the greatest population,"
refers to the most populous city with any territory within the county.

(No. 97-1814—Submitted June 10, 1998—Decided September 30, 1998.)

APPEAL from Board of Tax Appeals, Nos. 96-D-1241 and 96-D-1242.

———————————

{¶ 1} In Fairfield County, the Undivided Local Government Fund
("ULGF") and the Undivided Local Government Revenue Assistance Fund
("ULGRAF") had been allocated according to the statutory method as prescribed
in R.C. 5747.51 and 5747.62. In 1996, the Fairfield County Budget Commission
sought to adopt the alternative method and formula for ULGF and ULGRAF
apportionment as authorized by R.C. 5747.53 and 5747.63. The commission
passed a motion adopting the alternative method and formula and then distributed
the motion to the political subdivisions in Fairfield County for approval.

{¶ 2} Pursuant to R.C. 5747.53 and 5747.63, the transition to the alternative
method and formula must be approved by "the board of county commissioners; the
legislative authority of the city, located wholly or partially in the county, with the
greatest population; and a majority of the boards of township trustees and

legislative authorities of municipal corporations, located wholly or partially in the county, excluding the legislative authority of the city with the greatest population." R.C. 5747.53(A) and 5747.63(A).

{¶ 3} The commission treated the Columbus City Council as "the legislative authority of the city, located wholly or partially in the county, with the greatest population." The commission chose Columbus because, based on the Ohio Department of Development's 1992 population estimates, Columbus had the greatest total population of all cities located in Fairfield County. The parties agree that Columbus had a total population of 642,987 with 701 residents living in Fairfield County, and that the city of Lancaster had a total population of 35,342, all of whom lived in Fairfield County.

{¶ 4} The board of county commissioners, a majority of the political subdivisions, and the city of Columbus approved the alternative method and formula as adopted by the commission. Lancaster did not approve the alternative apportionment method. Lancaster appealed the commission's ULGF and ULGRAF apportionment to the Board of Tax Appeals ("BTA"). On appeal, the parties stipulated that the only issue to be decided by the BTA was "whether the alternate methods of distributing the Undivided Local Government and the Undivided Local Government County Budget Assistance Funds as adopted by the Fairfield County Budget Commission on April 8, 1996 were approved by 'the legislative authority of the city, located wholly or partially in the county with the greatest population,' pursuant to R.C. 5747.53(A) and 5747.63(A)."

{¶ 5} Lancaster also argued before the BTA that Columbus did not approve the alternative formula as adopted by the commission. According to Lancaster, the resolution passed by Columbus did not mirror the alternative formula adopted by the other Fairfield County political subdivisions. Thus, Lancaster argued, because Columbus failed to adopt the same formula as the other entities, the measure failed and the commission must revert to the statutory method of apportionment.

**{¶ 6}** The BTA held that Columbus was the city with the greatest population for purposes of approving the ULGF and ULGRAF apportionment and that Columbus had indeed approved the alternative apportionment method as adopted by the other Fairfield County political subdivisions.

**{¶ 7}** The cause is before this court upon an appeal as of right.

_____

*John R. Varanese,* for appellant.

*Roy E. Hart,* Fairfield County Assistant Prosecuting Attorney, for appellees.

_____

**COOK, J.**

**{¶ 8}** Lancaster is convinced that the General Assembly could not have intended that Columbus, with far fewer citizens to be affected by a decision relating to Fairfield County than Lancaster, have such a significant say in that county's financial affairs. But, because the words used by the General Assembly are only understandable as disfavoring Lancaster's position, this court must apply those words without assessing Lancaster's public policy concerns.

I

**{¶ 9}** In its first proposition of law, Lancaster argues that the phrase "the legislative authority of the city, located wholly or partially in the county, with the greatest population" is ambiguous. According to Lancaster, the word "or" in the statute "is a disjunctive particle that marks an alternative, generally corresponding to *either*, as in *either this or that*." (Emphasis *sic*.) Thus, Lancaster would have us read the statute as referring to two alternate political subdivisions: (1) the city located wholly in the county with the greatest population, and (2) the city located partially in the county with the greatest population. Yet Lancaster offers this possible reading while acknowledging that it fails grammatically because, by any reading, the General Assembly intended to refer to only one city. The grammatical failure of the proffered version is then the springboard for Lancaster's asking this

court to reform the statute. Lancaster asks this court, based on the supposed ambiguity, to look beyond the words in order to conform to Lancaster's preferred public policy of favoring the city with the most citizens affected. According to Lancaster, "[a]s Columbus has no stake in a statutory allocation, it is inconceivable that the General Assembly intended that it play such a pivotal role in the approval of an alternate formula in Fairfield County."

{¶ 10} We reject Lancaster's reading of the statutory language. Lancaster discerns ambiguity only by a contorted reading of the phrase at issue. When construing statutes, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. "Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced constructions * * *." *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 627, 64 N.E. 574, 576.

{¶ 11} The phrase "located wholly or partially in the county" is a participial phrase that modifies the noun "city." See, *e.g*., Strunk & White, The Elements of Style (3 Ed.1979) 13. The city identified in this phrase may be located wholly in the county or it may be located partially in the county so long as it has the greatest population of all cities located in the county. When read in context, this phrase conveys one meaning: of all the cities in the county, the city with the greatest population casts one of the three approval votes whether that city is located wholly or partially in the county.

{¶ 12} The texts of R.C. 5747.53 and 5747.63 express the General Assembly's intent; thus, we must interpret the statutes as written and cannot resort to other forms of statutory construction. R.C. 1.49. In *Slingluff*, the court explained this now well-settled rule of statutory interpretation:

"But the intent of the lawmakers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the lawmaking body, there is no occasion to

resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction." *Slingluff v. Weaver,* 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus.

{¶ 13} The court further explained this rule in *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105-106, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381:

"It is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. * * * If that inquiry reveals the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretive effort is at an end, and the statute must be applied accordingly." (Citations omitted.)

{¶ 14} Lancaster's interpretation forces a construction which is contrary to "the natural and most obvious import of the language" used by the General Assembly. Accordingly, we hold that the phrase in R.C. 5747.53(A) and 5747.63(A), "the legislative authority of the city located wholly or partially in the county, with the greatest population," refers to the most populous city in the county with any territory within the county. Our conclusion that the statutes are unambiguous restricts us from entertaining Lancaster's public policy argument.

II

{¶ 15} In its second proposition of law, Lancaster argues that the Columbus City Council failed to approve the alternative formula in the proper form as adopted by the commission. Lancaster argues that "[a]nything short of a complete restatement would result in the approval of something other than Appellee's ULGF alternate formula." According to Lancaster, Columbus's resolution purporting to adopt the alternative method and formula partially and incorrectly restated the formula; thus Columbus did not approve the alternative formula. After reviewing the record before us, we find Lancaster's argument to be unpersuasive.

{¶ 16} The motion proffered by the commission included a table showing the percentage of total funds each group of political entities was to receive. The first paragraph following the table states that the eleven percent allocated to "Other Cites and Villages" is to be apportioned among the other cities and villages as shown in "Exhibit I." Exhibit I is a table showing each city and village and the share of the funds each is to receive.

{¶ 17} The resolution adopted by the Columbus City Council duplicates the table as found in the commission's motion. Immediately following the table, Columbus describes, in narrative form, how the eleven percent is to be apportioned among the "Other Cities and Villages." In Section 3 of the resolution, Columbus incorporates and makes part of its resolution the commission's motion and all exhibits attached thereto. Columbus apparently attempted to describe, in detail, how its share of the funds as an "other city" would be computed under the alternative apportionment method. Based on an examination of the commission's motion and Columbus's resolution, we conclude that the resolution substantially mirrored the commission's motion. The BTA therefore did not err in deciding that Columbus properly approved the alternative method and formula as adopted by the other political subdivisions in Fairfield County.

{¶ 18} The decision of the BTA, being neither unreasonable nor unlawful, is affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS and F.E. SWEENEY, JJ., concur.

RESNICK and LUNDBERG STRATTON, JJ., dissent.

PFEIFER, J., dissents.

––––––––––––––––––

**PFEIFER, J., dissenting.**

{¶ 19} R.C. 5747.53(A) and 5747.63(A) are subject to a more reasonable interpretation, one that is clear and unforced, than that offered by the majority. The

statutes refer to the city with the largest population inside the county boundaries, whether or not the city is located wholly within the county boundaries. It is inconceivable that the General Assembly could have meant anything else. The statute can be read that way without being grammatically creative. With apologies to Strunk & White, I will side with straight and right.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 20} Because I favor an interpretation that is reasonable and gives effect to what I believe is the legislative intent of the statute, I must respectfully dissent. I believe that the phrase in R.C. 5747.53 and 5747.63, "the legislative authority of the city, located wholly or partially in the county, with the greatest population," renders the statutes ambiguous. Proof of its ambiguity is the fact that several counties in Ohio, the BTA, and now this court have interpreted the phrase in different ways.

{¶ 21} The majority's strict grammatical analysis of the sentence ignores a more practical, common-sense interpretation that gives meaning to the purpose and intent of the statutes. R.C. 5747.53 and 5747.63 allow a county to approve an alternative method of apportionment of funds. The formula allots votes to certain groups or entities within that county that have an interest in obtaining those funds. These groups would include the county commissioners, township trustees, municipal corporations, and the city having the greatest population in the county, whether that city is located wholly or partially in the county.

{¶ 22} A strict grammatical approach, based upon the location of a participial phrase within the sentence, appears to defeat the purpose of the statutes and results in an unreasonable interpretation. The city of Columbus with 701 residents in Fairfield County has more influence over Fairfield County's apportionment of government funds than does the city of Lancaster, which has 35,342 residents in the county. According to the majority's interpretation,

Columbus meets the statutory description of "the city, located wholly or partially in the county, with the greatest population" because Columbus's total population of 642,987, although only partially located in Fairfield County, is greater than Lancaster's total population. I do not believe that the General Assembly intended a city with a minimal population in a county to have a greater voice in the allocation of county funds than the most populous city located in that county.

{¶ 23} Other Ohio counties have followed the approach advocated by the city of Lancaster. In Trumbull County, the city of Warren was designated as "the city, located wholly or partially in the county, with the greatest population," although the city of Youngstown, with a greater total population than Warren, is located partially in Trumbull County but has fewer residents in the county than does the city of Warren. Miami County designated the city of Piqua, although Huber Heights, with a population of only ten in Miami County, has a greater total population than does Piqua. The city of Delaware had a population of 21,155 wholly located in Delaware County in 1992. The city of Columbus was partially located in Delaware County in 1992 but did not have any residents in the county. Delaware County designated the city of Delaware, although Columbus had a greater overall population of 642,987. Clermont and Greene Counties have also followed this interpretation.

{¶ 24} It is implausible that the General Assembly intended the result reached by the majority. There is a more reasonable and fair construction that would invite a just result and feasible execution of R.C. 5747.53 and 5747.63. Therefore, I respectfully dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

————————————