[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 189.]

HARSCO CORPORATION, APPELLANT, *v.* TRACY, TAX COMMR., APPELLEE.

[Cite as *Harsco Corp. v. Tracy*, 1999-Ohio-155.]

*Taxation—Application of personal property tax to manufacturing inventory of a division sold by a corporation.*

(No. 98-1331—Submitted March 16, 1999—Decided August 4, 1999.)

APPEAL from the Board of Tax Appeals, No. 95-K-294.

_____

{¶ 1} On December 1, 1989, Harsco Corporation ("Harsco"), appellant, sold a distinct division it owned and operated in Wooster, Ohio, its Astro Metallurgical division, to Astro Metallurgical Corporation ("Astro Metallurgical"), a newly formed corporation. In this sale, Harsco sold its division's inventory to Astro Metallurgical. Thus, after this sale, Harsco no longer operated a business or owned inventory in Wooster, but Harsco continued in business and owned personal property used in business in Ohio.

{¶ 2} On its 1990 personal property tax return, Harsco summed the month-ending true values of its inventory for the eleven months it owned the Astro Metallurgical division. It then divided this total by twelve, the number of months Harsco operated in Ohio in 1989. Accordingly, it listed $8,421,489 as the average value of its inventory for 1990.

{¶ 3} Astro Metallurgical also filed a 1990 return. In its return, it divided its December inventory, the only month it owned personal property in Ohio, by one, the number of months it owned personal property in Ohio. Thus, it listed $8,612,925.71 as the average value of its inventory for 1990. As Harsco points out, the two taxpayers reported a total of $17,034,415 for inventory at the Astro Metallurgical division location for tax year 1990.

{¶ 4} In an application for final assessment, Harsco requested the Tax

Commissioner, appellee, to eliminate the inventory reported for its Astro Metallurgical division from Harsco's 1990 personal property tax return. It claimed that including the inventory resulted in an excessive assessment and in violations of its federal due process and equal protection rights. The Tax Commissioner, nevertheless, refused to modify the assessment, and Harsco appealed the Tax Commissioner's order to the Board of Tax Appeals ("BTA").

{¶ 5} At the BTA, Harsco presented as a witness William P. Driscoll, whom the BTA qualified as an expert in public finance and state and local tax issues. Driscoll clearly and crisply described how Ohio applies the personal property tax to manufacturing inventory and how this application affected Harsco and Astro Metallurgical in tax year 1990.

{¶ 6} In summary, Driscoll noted that averaging a taxpayer's monthly inventory values for the prior year provided the inventory value for the taxpayer's current tax year. He explained that averaging month-ending inventory values evens fluctuating monthly inventory amounts and discourages manipulating inventory, which might occur if Ohio employed an ordained date on which to value inventory.

{¶ 7} Driscoll pointed out that, here, Harsco, an on-going taxpayer, sold a discrete division to Astro Metallurgical, a new taxpayer. Driscoll explained that, under these circumstances, Ohio receives tax for inventory at the same business location from both taxpayers based on each one's average monthly inventory at such location. He testified that this result elevated ease of administering the tax over equity for taxpayers. Driscoll testified that this situation provided extra-adequate revenue, a windfall, to the taxing district. Driscoll called this sale a special and unusual circumstance that should invoke the Tax Commissioner's authority to adjust the assessments under R.C. 5711.18.

{¶ 8} To remedy this situation, Driscoll proposed that the Tax Commissioner assume that no sale occurred. Then the Tax Commissioner should add the month-ending inventories of Harsco and Astro Metallurgical, divide the

sum by twelve, and assess the tax for this average monthly inventory against Astro Metallurgical up to Astro Metallurgical's actual average monthly inventory amount. If this combined average monthly inventory was greater than Astro Metallurgical's actual average monthly inventory, the Tax Commissioner should assess Harsco for the difference. According to Driscoll, this solution would fairly tax the taxpayer that continued in business at the location and would provide appropriate tax revenues to the taxing district, since Harsco would make up any shortfall in tax revenues.

{¶ 9} The BTA, however, rejected Harsco's argument and affirmed the Tax Commissioner's order. The BTA applied *Rick Case Motors, Inc. v. Tracy* (1994), 71 Ohio St.3d 380, 643 N.E.2d 1137, and R.C. 5711.16 to determine that the statute requires the Tax Commissioner to assess the tax against Harsco in the manner that he did. In addition, the BTA declined to address Harsco's constitutional arguments, since the BTA lacks jurisdiction over constitutional claims.

{¶ 10} This cause is now before the court upon an appeal as of right.

——————————

*Baker & Hostetler, L.L.P., Edward J. Bernert* and *George H. Boerger*, for appellant.

*Betty D. Montgomery,* Attorney General, and *Barton A. Hubbard,* Assistant Attorney General, for appellee.

*Bricker & Eckler, L.L.P.*, *Mark A. Engel* and *Mary Leslie Robins*, urging reversal for *amicus curiae*, Ohio Manufacturers' Association.

——————————

*Per Curiam.*

{¶ 11} Harsco, first, argues that the assessment process overstates the value of the inventory at the Astro Metallurgical division location and that the Tax Commissioner has authority under R.C. 5711.18 to adjust the assessments. Harsco claims that it does not challenge applying the averaging principle; however, it

claims that averaging by the two taxpayers in the special circumstances of this case overstates the average value of the inventory. The Tax Commissioner replies that, under the current statutes and case law, he correctly valued the inventory of both taxpayers. We agree with the Tax Commissioner.

{¶ 12} R.C. 5711.16 sets forth how a manufacturer lists its inventory for the personal property tax:

"When [a manufacturer] is required to return a statement of the amount of his personal property used in business, he shall include the average value, estimated as provided in this section, of all articles purchased, received, or otherwise held for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying, or refining, and of all articles which were at any time by him manufactured or changed in any way, either by combining, rectifying, refining, or adding thereto, which he has had on hand during the year ending on the day such property is listed for taxation annually, or the part of such year during which he was engaged in business. * * *

"The average value of such property shall be ascertained by taking the value of all property subject to be listed on the average basis, owned by such manufacturer on the last business day of each month the manufacturer was engaged in business during the year, adding the monthly values together, and dividing the result by the number of months the manufacturer was engaged in such business during the year. *The result shall be the average value to be listed. * * *"* (Emphasis supplied.)

{¶ 13} In *Rick Case Motors, Inc. v. Tracy* (1994), 71 Ohio St.3d 380, 382, 643 N.E.2d 1137, 1138, a case interpreting R.C. 5711.15, which directs the averaging of inventory held by a merchant, we stated:

"[W]e have long and consistently held that a merchant must include in the calculations any inventory it held even if it did not hold inventory for a full year. In *United Eng. & Foundry Co. v. Bowers* (1960), 171 Ohio St. 279, 282, 13 O.O.2d 240, 241-242, 169 N.E.2d 697, 699, we held that these inventory valuation statutes

may draw on the antecedent fact of holding inventory for a criterion in the operation of the statutes. In *Beerman Stores, Inc. v. Bowers* (1962), 173 Ohio St. 59, 18 O.O.2d 258, 179 N.E.2d 521, we noted that inventory is taxable if it is used in business in Ohio. At 62, 18 O.O.2d at 258 [259], 179 N.E.2d at 522, we stated:

" 'The language of Section 5711.15, Revised Code, is clear that, where a merchant has an inventory in existence in the taxing district for some part of a year, such inventory must be included in the valuation of tangible personal property for tax purposes. There is no requirement in such section that the inventory be in existence on tax listing day.

" ' * * * As we have noted, such section does not require the property to be in existence on any specific day, it requires only that such property shall have been used in business during the tax year.' "

{¶ 14} Despite Harsco's argument that this averaging process unfairly measures its inventory value as of tax listing date on inventory it no longer holds, R.C. 5711.16 states that "[t]he result [of the averaging process] shall be the average value to be listed." We apply clearly written statutes; we do not employ interpretive methods to discern their meaning. *Lancaster v. Fairfield Cty. Budget Comm.* (1998), 83 Ohio St.3d 242, 244-245, 699 N.E.2d 473, 475-476. Accordingly, the statutes do not empower the Tax Commissioner to adjust a taxpayer's average of monthly inventory values; the average value that Harsco calculated "shall be the average value to be listed."

{¶ 15} Next, Harsco contends that this averaging method violates its federal right to equal protection because its property is not valued at its true value. The Tax Commissioner denies this claim. Again, we agree with Tax Commissioner.

{¶ 16} The United States Supreme Court explained the review of equal protection claims in *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 2331-2332, 120 L.Ed.2d 1, 12:

"The Equal Protection Clause of the Fourteenth Amendment, § 1,

commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989, 990-991] (1920).

"As a general rule, 'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.' *McGowan v. Maryland*, 366 U.S. 420, 425-426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399] (1961). Accordingly, this Court's cases are clear that, unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest. See, *e.g.*, *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439-441 [105 S.Ct. 3249, 3254-3255, 87 L.Ed.2d 313, 320-321] (1985); *New Orleans v. Dukes*, 427 U.S. 297, 303 [96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517] (1976)."

{¶ 17} Further, Driscoll's statement at page sixteen of his report undermines Harsco's claim. Driscoll states:

"If the goal of a fair tax system is the equal treatment of equals, then the system can fail for two reasons. It can treat similarly situated persons in dissimilar ways. Or, it can treat dissimilarly situated persons with inappropriate uniformity. In the current case, the treatment of the sale of an entire division of the business results in the latter kind of unfair treatment."

{¶ 18} Thus, Driscoll contends that the averaging process of this case treats "dissimilarly situated persons with inappropriate uniformity." The Equal Protection Clause, however, "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*,

6

*supra*. If persons are dissimilarly situated, they are not in the same class, and the Equal Protection Clause does not shelter them.

{¶ 19} Nevertheless, we conclude that Harsco is within a class of similarly situated persons, *i.e.*, personal property taxpayers whose inventory value is averaged differently depending on business circumstances. *Chicago Pacific Corp. v. Limbach* (1992), 65 Ohio St.3d 432, 437, 605 N.E.2d 8, 12. We rule, however, as we did in *Chicago Pacific Corp.*, that "the state has a legitimate interest in levying a tax on average business inventory and avoiding the inequality of fluctuating inventories" and "discourages strategic mergers to avoid personal property tax." *Id.* Leveling inventory fluctuations and discouraging strategic mergers provide rational bases for inventory averaging under R.C. 5711.16.

{¶ 20} Accordingly, we hold that the BTA's decision is reasonable and lawful, and we affirm it.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 21} I respectfully dissent. By rigidly adhering to the averaging provision of R.C. 5711.16, the Tax Commissioner has ignored the equally important provisions of R.C. 5711.18, which require an assessment of *true value* and give the assessor flexibility to make adjustments to reflect true value. I believe this principle is also reflected in our holdings in *Youngstown Sheet & Tube Co. v. Kosydar* (1975), 44 Ohio St.2d 96, 73 O.O.2d 353, 338 N.E.2d 366, and *Avco Corp. v. Limbach* (1990), 51 Ohio St.3d 147, 555 N.E.2d 284.

{¶ 22} In this case, the Tax Commissioner does not dispute that its evaluation method results in excessive valuation. In fact, the valuation is 192 percent of true value because of Astro Metallurgical's holding the property after

the sale for only one month of the taxable year (but taxing it as a twelve-month holding).

**{¶ 23}** The Tax Commissioner could easily have adjusted the calculations to reflect one month's holding of inventory to reflect the *true value*. I believe both the statutes and our case law, as well as principles of fundamental fairness, require the adjustment.

**{¶ 24}** Therefore, I respectfully dissent, and would remand this case for a redetermination of value consistent with true value and the law.

PFEIFER, J., concurs in the foregoing dissenting opinion.

———————————