RICH'S DEPARTMENT STORES, INC., APPELLEE, *v.* LEVIN,

TAX COMMR., APPELLANT.

[Cite as *Rich's Dept. Stores, Inc. v. Levin*, 125 Ohio St.3d 15, 2010-Ohio-957.]

*Taxation — Ohio Adm.Code 5703-3-17 — Personal-property tax — Average inventory value — Vendor markdown allowances — Cost as disclosed by the books of the taxpayer.*

(No. 2009-0437 — Submitted December 1, 2009 — Decided March 18, 2010.)

APPEAL from the Board of Tax Appeals, No. 2005-T-1609.

_____

MOYER, C.J.

{¶ 1} Before the court is an appeal from a decision of the Board of Tax Appeals ("BTA") in a personal-property tax case. The BTA ordered the Tax Commissioner to reduce the values assigned to merchandise held in inventory by Rich's Department Stores with respect to tax years 2000, 2001, and 2002. Specifically, the BTA ordered reductions based upon "vendor markdown allowances," i.e., allowances granted by vendors that supplied merchandise to Rich's, by which those vendors compensated Rich's for having to mark down the merchandise from its expected retail price.

{¶ 2} On appeal, the commissioner primarily argues that the reductions ordered by the BTA violate the plain meaning of the relevant administrative rule, Ohio Adm.Code 5703-3-17 ("Administrative Rule 17"). Although the BTA's factual findings generally merit the deference of the court, a careful review of the evidence in light of the pertinent statutes and administrative rules shows that the BTA did err in construing and applying Administrative Rule 17. We accordingly reverse the BTA's decision and reinstate the final assessment certificates issued by the Tax Commissioner.

## Facts

### *Background*

**{¶ 3}** During the fiscal years at issue, Rich's used the retail inventory method ("retail method") to account for its merchandise inventory. Rich's kept track, in the aggregate, of costs and expected retail prices for all items held in inventory by each retail department of the company. Every addition of new items for sale led to a new computation of the cost average and retail average for each department.

**{¶ 4}** According to Rich's vice president of divisional accounting, the inventory's value is carried at the end of an accounting period as "ending inventory" or "ending inventory at cost" on the books of the company. That figure is generated by multiplying the ending retail figure by the cost-to-retail ratio. As part of that calculation, markdowns of expected retail price reduce the ending retail figure. See Larson & Miller, Fundamental Accounting Principles (13th Ed.1993) 502-503.

**{¶ 5}** At issue in the present case is the accounting for markdown *allowances*. Like other retailers, Rich's engages in open-ended relationships with its vendors, who have a vested interest in the success of the department store's efforts to sell the wares that they supply, and to do so at the projected profit. The store buys items for its inventory from the vendor with a certain "margin performance," or profit expectation, in mind. When items sell for less than the expected retail price, they are marked down. In those instances, the vendor will often grant Rich's an allowance, by which the vendor itself contributes to the margin performance. The amount of the allowance is typically credited as an offset against an amount Rich's would otherwise owe the vendor. These allowances are granted by informal agreements in which Rich's will request an allowance after a disappointing sales period.

**{¶ 6}** The record documents two effects of a markdown allowance on Rich's books. First, the allowance affects the balance sheet by reducing the company's liability in the form of accounts payable. Second, the allowance affects the income or profit-and-loss statement by reducing the cost of goods sold and thereby increasing the profit margin.

**{¶ 7}** It must be noted that the cost of goods sold, while significant in terms of the profit-and-loss statement, does not constitute the book value of the merchandise inventory. In that regard, the testimony of accounting professor Ray Stephens specifically addressed the distinction between ending inventory and cost of goods sold, asserting that allowances from merchandise vendors "should not result in a reduction in ending inventory."

*Procedural History*

**{¶ 8}** In assessing the property for the years at issue, the Tax Commissioner applied Administrative Rule 17. That rule addresses how to value merchandise inventory when the merchant keeps its books using the retail method. The rule states that the starting point for the value of merchandise under the statutes "shall prima facie be the 'average inventory value' at cost as disclosed by the books of the taxpayer." Under that provision, the commissioner's assessment began with the "average value of inventory" on Rich's books; ending inventory figures were derived from Rich's books to arrive at an appropriate 12-month average for the fiscal year. See R.C. 5711.15 (merchant ascertains value of inventory by computing 12-month average of inventory on hand).

**{¶ 9}** The commissioner next applied the additional language of Administrative Rule 17, which allows adjustments based on pertinent factors "reflected on the books of the taxpayer for the succeeding three months following the close of the annual accounting period of the current tax year." The administrator of the personal property tax division testified at the BTA hearing that under this part of the rule, the commissioner reduced the valuation

significantly below the inventory figure originally reflected on Rich's books for the period – as much as 20 percent below. But the commissioner denied reductions based on markdown allowances and issued final assessment certificates accordingly. Rich's appealed to the BTA.

{¶ 10} At the BTA hearing, Rich's presented the testimony of four employees and the tax agent who conducted the audit, along with 15 documentary exhibits. The commissioner offered the testimony of the administrator of the property-tax division and Professor Stephens. In the course of the BTA proceedings, Rich's withdrew all claims except the claim of reduction based on vendor markdown allowances.

{¶ 11} The BTA concluded that reducing the book value of inventory by the amount of markdown allowances constituted a valid computation of the "cost as disclosed by the books of the taxpayer" under Administrative Rule 17. *Rich's Dept. Stores, Inc. v. Wilkins* (Feb. 3, 2009), BTA No. 2005-T-1609, at 11, 2009 WL 294413. The board specifically held that Rich's claim involved "the factors that comprise book value." Id. at 12. Thus, the BTA did *not* predicate its decision on a finding that Rich's had rebutted the prima facie validity of book value; the BTA instead found that the adjustment Rich's requested was consistent with a proper determination of the prima facie standard: "cost as disclosed by the books of the taxpayer" under Administrative Rule 17.

{¶ 12} Based on this conclusion, the BTA ordered that the commissioner grant the requested reductions. The Tax Commissioner has appealed, and we now reverse.

**Analysis**

*The BTA Misconstrued Administrative Rule 17*

{¶ 13} It is settled that " '[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the

Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable and unlawful.' " *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor* (1968), 15 Ohio St.2d 52, 44 O.O.2d 30, 239 N.E.2d 25, syllabus. On the other hand, " 'we will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789.

{¶ 14} The Tax Commissioner advances several arguments contending that the BTA's decision is unreasonable and unlawful. We consider one of those arguments dispositive, rendering the others moot.

{¶ 15} The commissioner asserts that the BTA "misinterprets and misapplies the presumptively valid methodology for determining the true value set forth in [Administrative Rule 17]." The rule, which prescribes the method for determining the value of merchandise inventory when a taxpayer uses the retail method of accounting, provides as follows:

{¶ 16} "The true 'average inventory value of merchandise' to be estimated for taxation shall prima facie be the 'average inventory value' at cost as disclosed by the books of the taxpayer, after making proper adjustments for cash discounts and merchandise shrinkage, less the aggregate net markdowns, at cost, (taking into consideration markdown cancellations and additional mark-ups at cost) which are reflected on the books of the taxpayer for the succeeding three months following the close of the annual accounting period of the current tax year." Ohio Adm.Code 5703-3-17.

{¶ 17} The BTA specifically held that subtracting markdown allowances constituted a valid part of determining "cost as disclosed by the books of the taxpayer," treating markdown allowances as one of the factors that comprise book

value under the rule. The BTA plainly misconstrued the phrase "cost as disclosed by the books of the taxpayer" in Administrative Rule 17. That rule was promulgated to effectuate the general mandate that "depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money." R.C. 5711.18. It follows that any cost factor under the rule must relate to how the inventory is carried as a value on the books of the company following proper accounting principles and methods. See *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶ 17, citing *Carroll v. Dept. of Adm. Servs.* (1983), 10 Ohio App.3d 108, 110, 10 OBR 132, 460 N.E.2d 704 ("Administrative rules are designed to accomplish the ends sought by the legislation enacted by the General Assembly"); accord *Chicago Pacific Corp. v. Limbach* (1992), 65 Ohio St.3d 432, 435, 605 N.E.2d 8 (administrative rule does not conflict with a statute to the extent that it provides a reasonable, supportable interpretation of it).

{¶ 18} The BTA's decision violates this plain intent. As noted above, the record shows that "ending inventory" or "ending inventory at cost" is the accounting category that pertains to carrying the value of inventory on the books. Rich's evidence demonstrates that markdown allowances should be subtracted when computing the "cost of goods sold" on the profit-and-loss statement. But the evidence is uncontroverted that, as Professor Stephens adamantly stated, allowances from merchandise vendors "should not result in a reduction in the ending inventory."

{¶ 19} The testimony confirms that markdown allowances offset the amount of net markdowns, which, under the rule, are themselves subtracted from the retail figure when the value of inventory is computed. Professor Stephens testified that a markdown allowance "really should be a reduction in the net markdowns in order to value inventory." Rich's vice-president for divisional

accounting likewise testified that a markdown allowance leads Rich's to "record a markdown cancellation" and "a markdown cancellation, in essence, is [an] addition to retail." At oral argument, Rich's counsel acknowledged that the markdown reductions explicitly authorized under the rule involved net markdowns, i.e., markdowns reduced by the amount of markdown cancellations, including cancellations attributable to markdown allowances. The reduction that Rich's requested and the BTA granted is thus not one that properly relates to carrying the inventory at its value under generally accepted accounting principles.

{¶ 20} The BTA nonetheless construed Administrative Rule 17 to encompass the adjustment proposed by Rich's. In doing so, the board mistakenly construed the phrase "cost as disclosed by the books of the taxpayer" as requiring a cost determination that would include adjustments to the "cost of goods sold" on the profit-and-loss statement. The proper construction of the rule ties the prima facie standard to the "book value" mandated by R.C. 5711.18. As a result, the phrase " 'average inventory value' at cost as disclosed by the books of the taxpayer" encompasses only those adjustments that relate to the computation of "ending inventory."

{¶ 21} Rich's offers an additional reason why it may import a cost-of-goods-sold adjustment into the balance sheet: the agents of the Tax Commissioner on audit sometimes do the same thing. But a review of the testimony on this point persuades us that the type of adjustments described by the commissioner's agent involves standardizing the accounting between taxpayers within the confines of accepted accounting principles. Accord *R.H. Macy Co., Inc. v. Schneider* (1964), 176 Ohio St. 94, 26 O.O.2d 440, 197 N.E.2d 807 (tax assessor's substitution of retail inventory method for last-in, first-out method of accounting to determine the value of inventory was affirmed on appeal). For example, one of the Tax Commissioner's agents testified that expenditures related to transporting inventory might be expensed by one taxpayer on the income

statement but included in the cost of inventory by another taxpayer on the balance sheet. In the former circumstance, the tax agent would apply the transportation expenditure to increase the cost of inventory on the balance sheet in order to treat the taxpayers equally. Nothing in the record suggests that this adjustment strays outside accepted accounting principles; by contrast, subtracting markdown allowances from ending inventory plainly does.

{¶ 22} By ordering the reduction that Rich's had requested, the BTA erroneously construed the cost concept embodied in Administrative Rule 17 and thereby misapplied the rule. Because of this legal error, we must reverse the decision of the BTA.

*Rich's evidence fails to rebut the prima facie standard for value*

*set forth in Administrative Rule 17*

{¶ 23} Rich's points out that under the statutes and our case law, book value has only a prima facie validity as establishing true value, and other factors may indicate a higher or lower value than book value. See R.C. 5711.18 (in valuing property used in business, book value is taken to be true value "unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money"); *R.H. Macy Co.*, 176 Ohio St. 94, 26 O.O.2d 440, 197 N.E.2d 807, paragraph two of the syllabus; *PPG Industries, Inc. v. Kosydar* (1981), 65 Ohio St.2d 80, 19 O.O.3d 268, 417 N.E.2d 1385, paragraph one of the syllabus. Rich's then urges that the evidence of the effect of markdown allowances on cost constitutes evidence that the true value of its merchandise inventory was less than the properly computed book value of that asset. Accordingly, the BTA's reliance on that evidence as rebutting the prima facie standard would merit the deference of this court.

{¶ 24} We disagree. While the BTA's factual findings merit utmost deference when supported by the record, Rich's is asking that we defer to a finding that the BTA did not make. As discussed, the BTA held that subtracting

8

markdown allowances constituted a valid adjustment in arriving at the prima facie standard articulated by Administrative Rule 17. Because of that holding, the BTA had no need to address whether the prima facie standard had been rebutted, and it did not do so.

{¶ 25} Our disposition of this appeal contrary to the BTA's holding raises the question of whether the case should be remanded to afford the BTA the opportunity to determine whether Rich's has rebutted the prima facie standard. We hold that the present record does not justify a remand. The evidence that Rich's presented related to the effect of markdown allowances on the cost of merchandise for accounting purposes. While the concept of cost, properly construed, does relate to the manner in which inventory value is accounted for on the company's books, Rich's offers no reason why the evidence that it presented—the testimony and documentation that markdown allowances led to a reduction of cost of goods sold on the profit-and-loss statement—constitutes evidence of value apart from its significance under accounting principles.

{¶ 26} This contrasts sharply with cases in which the court has held that a presumptive valuation has been rebutted. In some cases, a recent arm's-length sale furnishes a direct indication of value that rebuts the depreciated book value. It is elemental that "[t]he best evidence of true value of tangible personal property is an arm's-length transaction." *Shiloh Automotive, Inc. v. Levin*, 117 Ohio St.3d 4, 2008-Ohio-68, 881 N.E.2d 227, ¶ 20, citing *Tele-Media Co. of Addil v. Lindley* (1982), 70 Ohio St.2d 284, 24 O.O.3d 367, 436 N.E.2d 1362, syllabus. E.g., *Grabler Mfg. Co. v. Kosydar* (1975), 43 Ohio St.2d 75, 72 O.O.2d 42, 330 N.E.2d 924 (sale price constituted value of personalty). In the present case, Rich's does not offer evidence of a recent bulk sale of inventory.

{¶ 27} In cases in which a sales price has not been offered as best evidence of value, other evidence might rebut the prima facie validity of book value. For example, in *Willard Storage Battery Co. v. Peck* (1954), 161 Ohio St.

197, 53 O.O. 89, 118 N.E.2d 514, a manufacturer sought a reduction of the value assigned to its inventory of lead. The court acknowledged that a month-by-month analysis of market prices for the commodity could rebut the value as carried on the company's books. Id. at 201. And in other cases, taxpayers have presented evidence of the specific nature of a manufacturing business to rebut the Tax Commissioner's decision to add plant depreciation into the value of manufacturing inventory. See *PPG Industries, Inc.*, 65 Ohio St.2d 80, 19 O.O.3d 268, 417 N.E.2d 1385; *Youngstown Sheet & Tube Co. v. Kosydar* (1975), 44 Ohio St.2d 96, 73 O.O.2d 353, 338 N.E.2d 366. The evidence in these types of cases bears no similarity to that offered by Rich's here.

{¶ 28} In essence, Rich's has proven nothing more than that its enjoyment of vendor markdown allowances entails a reduction of the cost of goods sold for accounting purposes and, more generally, can be viewed as an after-the-fact offset against the original acquisition cost of the merchandise. The former does not, as already discussed, justify an adjustment to book value; nor does the latter more directly establish true value than do the accounting methods. That is so because a more precise computation of the acquisition cost does not, by itself, establish what Rich's can receive by selling the merchandise, which is the relevant figure for applying the retail inventory method of accounting.

{¶ 29} Rich's argument in effect claims that it should pay *less* tax, through a reduction in the value of its inventory, because it has received a *benefit* from its vendors in the form of a credit against monies owed. The inventory itself and the expected retail price thereof do not change merely because Rich's has been granted a markdown allowance. While the need to mark down merchandise may indicate a reduced value for some items still held in inventory, the retail inventory method properly establishes a conservative valuation overall by stating the value of merchandise inventory at cost rather than at expected profit. And while markdowns by themselves reduce profitability and thereby indicate a lower

value of merchandise to the merchant, the grant of markdown allowances supports profitability; as a result, the expectation of receiving allowances stabilizes rather than reduces the value of the merchandise inventory. Put in this light, the logical fallacy of Rich's argument is exposed.

{¶ 30} We hold that the record furnishes no factual basis upon which the BTA could predicate a reduction from book value in the amount of markdown allowances. It follows that there is no need for a remand.

### Conclusion

{¶ 31} The foregoing analysis causes us to conclude that the BTA erred in its construction and application of Administrative Rule 17, and our resolution of that issue renders the commissioner's other arguments moot. We therefore reverse the BTA's decision and reinstate the Tax Commissioner's final assessment certificates as issued.

Decision reversed.

O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER, LUNDBERG STRATTON, and O'DONNELL, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 32} I respectfully dissent.

{¶ 33} It is difficult to comprehend how a vendor markdown allowance on merchandise delivered to a store for retail sale does not reduce the inventory cost of that merchandise, and thus that reduced inventory cost should be recognized for purposes of assessing personal property tax. Every company assesses a certain cost to its inventory; when at some point subsequent to that assessment the retailer is afforded a markdown allowance on the inventory, retailers treat that as a reduction in the cost of inventory.

{¶ 34} In *R.H. Macy Co., Inc. v. Schneider* (1964), 176 Ohio St. 94, 96, 26 O.O.2d 440, 197 N.E.2d 807, we stated that "[t]he assessment of personal

property requires the assessor to consider the book value as stated by the taxpayer, together with other statements of the taxpayer and other available evidence, and apply the applicable rules of valuation to arrive at the ultimate goal of the assessment, a determination of the true value of the property."

{¶ 35} With respect to merchandise in inventory, Ohio Adm.Code 5703-3-17 ("Administrative Rule 17") provides, "The true 'average inventory value of merchandise' to be estimated for taxation shall prima facie be the 'average inventory value' at cost as disclosed by the books of the taxpayer, after making proper adjustments for cash discounts and merchandise shrinkage, less the aggregate net markdowns, at cost, * * * which are reflected on the books of the taxpayer for the succeeding three months following the close of the annual accounting period of the current tax year."

{¶ 36} As stated by the Board of Tax Appeals, "Once cost is determined on the books of the taxpayer, [Administrative Rule 17] permits additional adjustments for cash discounts, merchandise shrinkage and net markdowns. These adjustments are made only after the cost of the inventory is determined. As we have previously discussed, cost, as disclosed on Rich's books, includes [markdown allowances]." *Rich's Dept. Stores, Inc. v. Wilkins* (Feb. 3, 2009), BTA No. 2005-T-1609, at 11, 2009 WL 294413.

{¶ 37} The board found, "Here, Rich's provided through numerous witnesses and documents evidence indicating the amount of MDAs applied, how the MDAs are tracked through its accounts payable system, how the MDAs are applied to reduce cost, how that reduction in cost is shown on its profit and loss statements, and how margin is tracked on Rich's ledgers. Various documents have been submitted showing both the MDA information and its impact on cost." Id. at 14-15.

{¶ 38} After considering the foregoing evidence and other evidence that was competent and probative, including expert witness testimony in support of the

Tax Commissioner, the board held that markdown allowances "are indeed a reduction in inventory cost" and that subtracting such allowances from inventory value constituted a valid adjustment in arriving at the prima facie book value of inventory pursuant to Administrative Rule 17. Id. at 8, 11. Consequently, the board ordered the Tax Commissioner to grant Rich's requested claim for a reduction in its 2000, 2001, and 2002 inventory value.

{¶ 39} This is compelling analysis in my view. " ' The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable and unlawful.' " *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revisi*on, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, quoting *Cuyahoga Bd. of Revision v. Fodor* (1968), 15 Ohio St.2d 52, 44 O.O.2d 30, 239 N.E.2d 25, syllabus. Accordingly, I respectfully dissent and would affirm the decision of the Board of Tax Appeals in this instance.

PFEIFER and LUNDBERG STRATTON, JJ., concur in the foregoing opinion.

_____

Bricker & Eckler, L.L.P., and Mark A. Engel, for appellee.

Richard Cordray, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellant.

_____