WALTERS ET AL., APPELLEES, *v.* KNOX COUNTY BOARD OF REVISION, APPELLANT.

[Cite as Walters *v.* Knox Cty. Bd. of Revision (1989), 47 Ohio St. 3d 23.]

(No. 88-569—Submitted September 19, 1989—Decided November 22, 1989.)

*Charles M. Walters, pro se.*

*James M. Ronk,* county prosecutor, and *Kim M. Rose,* for appellant.

WRIGHT, J. Appellant board of revision argues that the BTA acted unreasonably and unlawfully when it accepted the sale prices the Walterses paid for the five Apple Valley Lake lots as the true values of the properties. In its first proposition of law, the board of revision contends that the BTA failed to consider factors other than the purchase prices of the five lots. R.C. 5713.03, which governs taxable valuation of real property, provides in pertinent part:

"* * * In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor shall consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes."

This court held in *Ratner* v. *Stark Cty. Bd. of Revision* (1986), 23 Ohio St. 3d 59, 23 OBR 192, 491 N.E. 2d 680, that "[a]lthough the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence." *Id.* at syllabus. In other words, R.C. 5713.03 has not been given an "* * * absolutist interpretation * * *," *id.* at 61, 23 OBR at 194, 491 N.E. 2d at 682; however, we do accept the "* * * *presumption* that the sale price reflect[s] true value," *id.* at 61, 23 OBR at 193, 491 N.E. 2d at 682. (Emphasis added.)

The board of revision presented evidence at the BTA hearing in an unsuccessful attempt to rebut the presumption that the sale prices of the five properties reflected their true values. The auditor and expert appraiser testified, appellant's exhibits were accepted into evidence, and the hearing examiner took an active part in the proceeding. The BTA was obliged to examine this evidence, but not to hold that it rebutted the presumption that the sale prices were the true values of the five lots. "The Board of Tax Appeals is not required to adopt the valuation fixed by an expert or witness. * * *" (Citations omitted.) *Cardinal Federal S. & L. Assn.* v. *Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St. 2d 13, 73 O.O. 2d 83, 336 N.E. 2d 433, paragraph two of the syllabus. The appraiser's testimony was quite general, and neither the auditor nor the appraiser explained with any degree of precision how their list of sales or other information was

used to arrive at the values assigned the properties by the board of revision. "The BTA * * * has wide discretion to determine the weight given to evidence and the credibility of witnesses before it. Its true value decision is a question of fact which will be disturbed by this court only when it affirmatively appears from the record that such decision is unreasonable or unlawful. *Cardinal Federal S. & L. Assn.* v. *Cuyahoga Cty. Bd. of Revision* * * * [*supra*], paragraphs two, three, and four of the syllabus." *R.R.Z. Associates* v. *Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St. 3d 198, 201, 527 N.E. 2d 874, 877.

The board of revision's second proposition of law concerns a hearsay letter from the President of Talcon Corporation, the company that conducted the 1986 auction. The letter stated that the auction was an arm's-length sale. Appellant objected to the admission of the letter into evidence during the BTA hearing. Appellant now contends that even though hearsay evidence may establish comparable sale prices, admission of hearsay becomes objectionable when a dispute arises over the credibility or condition of the sale.

This contention is not well-taken. The BTA had the benefit of the testimony of Charles Walters, a participant in the auction who was cross-examined by appellant at the hearing. The letter appears to have played no part in the BTA's decision, as it is not mentioned in the BTA opinion. Admission of the letter into evidence hardly amounts to reversible error.

Appellant's final proposition of law is that the sales were not conducted at arm's length, as set forth in R.C. 5713.03, which directs the auditor to consider the sale price of a lot to be its true value if the sale was recent, if the buyer and seller were both willing, and "* * * if such tract, lot, or parcel has been the subject of an arm's length sale * * *."

We have never defined "arm's-length sale."[1] In its opinion below, the BTA defined it as "* * * one which encompasses bidding and negotiation on the open market between a ready, willing and able buyer, and a ready, willing and able seller, both being mentally competent, and neither acting under duress or coercion." According to Black's Law Dictionary (5 Ed. 1979) 100, in an arm's-length transaction "* * * each [party] act[s] in his or her own self interest * * *." In sum, an arm's-length sale is characterized by these elements: it is voluntary, *i.e.*, without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest. All these elements were present in the auction sales in this case.[2]

The board of revision contends

---

[1] In *In re Estate of Sears* (1961), 172 Ohio St. 443, 17 O.O. 2d 417, 178 N.E. 2d 240, paragraph two of the syllabus, we defined "market value" as "* * * the fair and reasonable cash price which can be obtained in the open market, not at a forced sale or under peculiar circumstances but at voluntary sale between persons who are not under any compulsion or pressure of circumstances and who are free to act; or, in other words, between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so." This is similar to the BTA's definition of "arm's-length" sale discussed *infra*.

[2] R.C. 5713.04 provides in part:
"* * * The price for which such real property would sell at auction or forced sale shall not be taken as the criterion of its value." It is not clear whether the term "auction" in this statute applies to a voluntary sale where the seller could accept or reject a bid such as occurred in this case, or

that the Talcon auction sales of the five lots were not at arm's length because the Walterses and sellers did not negotiate face to face, the Walterses did not learn the sellers' reasons for selling, and the Walterses did not know the sellers' identities until after the transactions. These circumstances have little or no bearing on whether the sales were at arm's length.

The BTA concluded that because there was no specific testimony to show forcible inducement in the resort developer's sale of the sixth lot to the Walterses, that sale was also conducted at arm's length. Thus, the $8,200 sale price represents the true value of the sixth lot. We agree. This valuation is consistent with the principle that the purchase price in a recent arm's-length sale is presumed to represent the true value of the property. That presumption was not rebutted for any of the six lots in this case.

The decision of the BTA is therefore affirmed.

*Decision affirmed.*

SWEENEY, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

MOYER, C.J., and HOLMES, J., dissent.

DOUGLAS, J., concurring in judgment only. I concur in the judgment of the majority but write separately to make two points.

R.C. 5713.03 provides, in pertinent part, that "* * * [i]n determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor *shall consider the sale price* of such tract, lot, or parcel *to be the true value* for taxation purposes. * * *" (Emphasis added.)

It is difficult to imagine how this statutory mandate could be more clear. Yet, the majority once again gratuitously slips into the opinion the statement from *Ratner* v. *Stark Cty. Bd. of Revision* (1986), 23 Ohio St. 3d 59, 23 OBR 192, 491 N.E. 2d 680, that "[a]lthough the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence." This seemingly simple statement of law continues to bewilder county auditors and other taxing authorities. I continue to believe that we should follow the taxing statutes as enacted by the General Assembly, rather than make tax-case decisions on an *ad hoc* basis.

Likewise, I am concerned with the majority's definition of "arm's-length" sale. To include in the definition the term "open market" might very well lead to the interpretation and conclusion that a *private* sale could never be at "arm's length." "Open market" seems to have the indicia of advertising, bidding and/or negotiations with the world at large.

This *is not* and should not be the law. Private sale transactions which are at arm's length occur every day. For us to now take upon ourselves the redefining of the term "arm's length" from its currently accepted meaning

---

applies only to auctions such as sheriff's sales, sales pursuant to bankruptcy proceedings, and the like. We do not, however, decide this question as appellant did not raise this issue at the BTA hearing or on appeal.

only causes unnecessary confusion. We should avoid such activity.

Accordingly, while I concur in the ultimate judgment of the majority, I cannot concur in the reasoning of the majority.

HOLMES, J., dissenting. The board of revision argues that the BTA erred when it adopted the prices paid at the auction as the true values of the properties without considering other factors including evidence, adduced by the auditor and the professional appraiser, of recent sales in the area. Further, the board of revision argues that the auction sales were not arm's-length transactions, but were more in the nature of forced sales.

In *Ratner* v. *Stark Cty. Bd. of Revision* (1986), 23 Ohio St. 3d 59, 23 OBR 192, 491 N.E. 2d 680, this court held in the syllabus:

"Although the sale price is the 'best evidence' of true value of real property for tax purposes, it is not the only evidence. A review of independent appraisals based upon factors other than the sale price is appropriate where it is shown that the sale price does not reflect true value. (*Columbus Bd. of Edn.* v. *Fountain Square Assoc., Ltd.* [1984], 9 Ohio St. 3d 218, 219, construed.)"

Thus, assuming that the auction sales were at arm's length, the sale prices are the best evidence of true value; however, they are not conclusively the properties' true values. This is so because other factors, such as favorable financing, the mode of payment, sale-lease arrangements, or abnormal economic conditions, might indicate that the sale prices were not the properties' true values. According to *Ramsey* v. *Bd. of Revision of Franklin Cty.* (1943), 141 Ohio St. 366, 368, 25 O.O. 476, 48 N.E. 2d 102, 103, "[t]he valuation of these premises must necessarily bear some relation to valuations placed on similar properties in the same locality * * *."

The BTA had before it evidence of sales of other lots in Apple Valley that occurred, mostly, in 1982, 1983, and 1984. The auditor presented these sales and stated that he used them for the county's 1984 reappraisal. He testified that the list was not truly a list of comparables, but a list to show a range of sales for the 1984 reappraisal. Next, the board of revision presented the expert appraiser who had been hired to reappraise property in the county. Basing his opinion on his education, training, and familiarity with each property, he testified that in 1986 lot 410 was worth $2,800, lot 239 was worth $5,740, lot 240 was worth $4,000, lot 503 was worth $6,000, and lot 15 was worth $6,000. He was not asked his opinion for lot 500; however, the county appraised the lot at $5,480.

Here, as stated, the BTA did not consider other factors than the sale price at auction. The sale price at this auction should not be the sole criterion of fair market value, in that there are many factors which should be taken into consideration in determining value. Not to have done so is unreasonable and reversible error. I would reverse and remand.

MOYER, C.J., concurs in the foregoing dissenting opinion.