SHILOH AUTOMOTIVE, INC., APPELLANT AND CROSS-APPELLEE, *v.*
LEVIN, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as *Shiloh Automotive, Inc. v. Levin,*
117 Ohio St.3d 4, 2008-Ohio-68.]

(No. 2006–1384—Submitted October 17, 2007—Decided January 16, 2008.)

PFEIFER, J.

{¶ 1} This is an appeal as of right by appellant and cross-appellee, Shiloh Automotive, Inc. ("Shiloh Auto"), and a cross-appeal as of right by appellee and cross-appellant, Richard A. Levin, Tax Commissioner of Ohio, from a decision of the Board of Tax Appeals ("BTA") in case Nos. 2004–M–380 and 2004–M–1283. The BTA consolidated the cases because Shiloh Auto raised essentially the same errors in each case.

{¶ 2} The BTA's order affirmed the commissioner's final determination finding that Shiloh Auto had incorrectly valued certain personal property used in business on its 2001 and 2002 Ohio personal property tax returns. The commissioner had found that the price paid by Shiloh Auto in 1999 for certain assets did not reflect the true value of those assets for personal property tax purposes. Upon review, we hold that the BTA's decision was reasonable and lawful, and we therefore affirm it in accordance with R.C. 5717.04. We dismiss the commissioner's cross-appeal as premature.

## Factual and Procedural Background

{¶ 3} Shiloh Auto is a subsidiary of Shiloh Industries, Inc., a publicly traded corporation. Historically, Shiloh Industries was a Tier–II supplier of component parts to the automotive industry; a Tier–II supplier is one that supplies components to a Tier–I supplier, which in turn provides products directly to an automotive manufacturer such as General Motors. Shiloh Auto was formed and began business in 1999 when Shiloh Industries purchased the automotive division of MTD Products, Inc. ("MTD"), a Tier–I supplier. Shiloh Industries' acquisition of the MTD automotive division ("MTD Auto") is at the center of the controversy in this matter.

{¶ 4} MTD, a privately held corporation, has been a shareholder of Shiloh Industries since the latter went public in 1993. At that time, MTD owned 37 percent of Shiloh Industries' common stock. Prior to the summer of 1998, members of management of Shiloh Industries and MTD would—on occasion—informally discuss the strategic benefits of combining the operations of Shiloh Industries and MTD Auto.

{¶ 5} In July 1998, Robert L. Grissinger, who was then Shiloh Industries' chairman of the board, president, and chief executive officer, and David J. Hessler, secretary of the board of directors of MTD and also a member of Shiloh

Industries' board of directors appointed by MTD, initiated formal discussions about combining the operations of Shiloh Industries and MTD Auto. In September 1998, MTD retained PricewaterhouseCoopers Securities, L.L.C. ("PWC") to assist in the sale of MTD Auto. MTD and PWC began the process of separating the financial records of MTD and MTD Auto. MTD and PWC then prepared an offering memorandum describing MTD Auto's business and certain financial information and provided the offering memorandum to Shiloh Industries in November 1998. MTD did not provide the memorandum to any other potential buyer.

{¶ 6} On December 10, 1998, MTD Auto made a presentation to Shiloh Industries' board of directors on the potential strategic benefits of merging Shiloh Industries and MTD Auto. Based on this presentation, the board of directors authorized its management team to commence a due-diligence review and evaluate the merits of acquiring MTD Auto. To assist in the due-diligence review, Shiloh Industries retained Robert W. Baird & Co., Inc. ("Baird"), to act as financial advisor; Jones Day to act as legal advisor; and Ernst & Young, L.L.P., to provide financial and accounting advice.

{¶ 7} Between December 1998 and March 1999, various meetings were held between Shiloh Industries and MTD representatives. Hessler, Curtis Moll, and Dieter Kaesgen—Shiloh Industries directors who were also affiliated with MTD—abstained from the discussions and subsequent vote on the MTD Auto acquisition. At a March 25, 1999 meeting, Shiloh Industries' board of directors postponed a final decision on the MTD Auto acquisition due to continuing concerns and because the board wanted Shiloh Industries' new president and chief executive officer to consider the proposed transaction.

{¶ 8} On April 9, 1999, the trusts of Dominick and James Fanello, both officers and directors of Shiloh Industries, agreed to sell an aggregate one million shares of Shiloh Industries common stock to Summit Insurance Company of America, a wholly owned subsidiary of MTD. Through this acquisition, MTD's ownership interest in Shiloh Industries increased to approximately 51 percent. As a result of this transaction, the Fanellos ceased to participate as board members in the approval process with respect to Shiloh Industries' proposed acquisition of MTD Auto. The stock sale closed on May 17, 1999.

{¶ 9} Between April 1999 and June 17, 1999, MTD and Shiloh Industries negotiated an asset-purchase agreement related to the sale of MTD Auto. On June 17, 1999, a special meeting was held at which Shiloh Industries' "disinterested directors"—the four remaining directors who had no affiliation with MTD—approved the acquisition of MTD Auto. Shiloh Auto had been formed on June 16, 1999, to serve as an acquisition vehicle for the assets of MTD Auto.

{¶ 10} Between June 17 and June 21, 1999, Shiloh Industries and MTD representatives negotiated the final terms of the agreement. Under those terms, Shiloh Industries was to pay $20 million in cash and $20 million in common stock to acquire MTD Auto, subject to price adjustments that could either increase or decrease the purchase price depending on MTD Auto's future performance. After the sale, MTD controlled 56 percent of the outstanding shares of Shiloh Industries.

{¶ 11} The newly formed automotive corporation, Shiloh Auto, filed its 2001 Ohio personal property tax returns using the purchase price of MTD Auto to establish the value of the machinery and equipment acquired. The commissioner rejected Shiloh Auto's valuation of the assets purchased. The commissioner found that Shiloh Industries' acquisition of MTD Auto was not an arm's-length transaction, and thus, the purchase price did not reflect the true value of the taxable assets. The commissioner also found drastic differences between Shiloh Auto's purchase-price valuation and allocation of the assets and MTD Auto's historical net book value of the assets recorded before the sale. Finally, the commissioner found that Shiloh Auto had failed to cooperate in supplying information to support its valuation and subsequent allocation.

{¶ 12} Shiloh Auto appealed to the BTA and also challenged the value assessed to the same property for tax year 2002. The BTA affirmed the commissioner's final determination, agreeing that the Shiloh Industries-MTD Auto transaction was not at arm's length and that the purchase price did not reflect the true value of the acquired assets. The BTA also found that Shiloh Auto's valuation of the assets was not supported by other competent or probative evidence outside the purchase price. Further, the BTA agreed with the commissioner that the net book value recorded by MTD Auto six months prior to the sale was the best evidence of the true value of the assets.

{¶ 13} On a separate issue, the BTA found that the commissioner had erred in the method that he used to assess the value of Shiloh Auto's property. Accordingly, the BTA remanded the case to the commissioner to apply depreciation rates in accordance with MTD Auto's acquisition history.

{¶ 14} Shiloh Auto filed an appeal challenging the BTA's decision that the purchase of MTD Auto was not an arm's-length transaction. The commissioner filed a cross-appeal seeking clarification of the appropriate depreciation schedule that should be applied on remand.

Law and Analysis

{¶ 15} In reviewing a decision of the BTA, this court determines whether it is "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783. The court "will not hesitate to

reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. However, this court will affirm the BTA's determinations of factual issues if the record contains reliable and probative evidence to support the BTA's findings. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 16} The burden rests on the taxpayer "to show the manner and extent of the error in the Tax Commissioner's final determination." *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, at ¶ 30. The commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." *Nusseibeh v. Zaino*, 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, at ¶ 10.

## Shiloh Auto's Appeal

### Proposition of Law No. 1

{¶ 17} Shiloh Auto's primary claim on appeal is that the purchase of MTD Auto was an arm's-length transaction and, as a result, the value of the machinery and equipment for personal property tax purposes was established by the sale price.

{¶ 18} R.C. 5711.18 provides:

{¶ 19} "In the case of personal property used in business, the * * * depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money."

{¶ 20} The best evidence of true value of tangible personal property is an arm's-length transaction. *Tele–Media Co. of Addil v. Lindley* (1982), 70 Ohio St.2d 284, 24 O.O.3d 367, 436 N.E.2d 1362, syllabus, following *Conalco, Inc. v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722. In *Walters v. Knox Cty. Bd. of Revision* (1989), 47 Ohio St.3d 23, 546 N.E.2d 932, syllabus, this court held that an arm's-length transaction possesses three primary characteristics: (1) it is voluntary, (2) it generally takes place in an open market, and (3) the parties act in their own interests.

{¶ 21} In its first proposition of law, Shiloh Auto challenges both the commissioner's and the BTA's findings that the acquisition of MTD Auto was not an arm's-length transaction for Ohio tax purposes.

{¶ 22} Shiloh Auto maintains that the commissioner erred when he found that the transaction was not at arm's length because it was not conducted on the open market. Shiloh Auto points out that *Walters* defined arm's-length transactions as *generally* occurring on the open market and, since *Walters*, no Ohio court or

administrative tribunal has held that an open market is a necessary element of an arm's-length sale.

{¶ 23} While it may be true that we have never said that an open market is a "necessary" element to an arm's-length transaction, we have upheld the BTA's finding that a transaction was not at arm's length in the absence of an open-market sale. *Kroger Co. v. Hamilton Cty. Bd. of Revision* (1993), 67 Ohio St.3d 145, 147, 616 N.E.2d 877. Indeed, we reaffirmed *Kroger* earlier this year, holding that the absence of even one of the factors set forth in *Walters* is sufficient to support a finding that a transaction was not conducted at arm's length. *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision,* 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, at ¶ 13.

{¶ 24} In any event, contrary to Shiloh Auto's claim, the commissioner's determination did not rest solely on the absence of an open-market transaction. Rather, the commissioner identified other reasons for rejecting Shiloh Auto's valuation of the subject property.

{¶ 25} First, in addition to the fact that MTD had negotiated only with Shiloh Industries and did not solicit other potential buyers, the commissioner noted the "significant relationship" between MTD and Shiloh Industries. The commissioner found that the Shiloh Industries-MTD Auto transaction was not between independent parties, because (1) MTD had controlled 51 percent of the outstanding shares of Shiloh Industries prior to the sale and (2) the companies' boards of directors shared common members.

{¶ 26} Second, the commissioner found that the purchase price did not reflect true value in light of Shiloh Auto's subsequent allocation of the purchase price to the assets acquired. Specifically, he noted that six months prior to the sale, MTD Auto had recorded the net book value of its assets at $77,893,938, with $30,980,684 attributed to property, plant, and equipment. But Shiloh Auto allocated only $3,938,509 of the total purchase price to property, plant, and equipment assets. And due to contingencies in the purchase agreement, the commissioner noted that Shiloh Auto had further reduced its allocation for these assets to approximately $1.3 million by the end of the 2002 fiscal year.

{¶ 27} Finally, the commissioner attempted to determine the accuracy of Shiloh Auto's valuation and allocation of assets by requesting various documents, including (1) disposal documentation of the assets acquired, (2) Shiloh Industries' due-diligence report on the MTD Auto acquisition, and (3) a breakdown of accounts receivables that Shiloh Auto acquired from MTD Auto as part of the transaction. However, Shiloh Auto refused to cooperate in supplying this information.

{¶ 28} In sum, the nature of the transaction, the discrepancies in valuation, and Shiloh Auto's undocumented purchase-price allocation led the commissioner to

conclude that Shiloh Auto's valuation did not reflect true value. Thus, we reject Shiloh Auto's challenge to the commissioner's final determination.

{¶ 29} Shiloh Auto also contends that the BTA erred when it found that, due to MTD's 51 percent ownership of Shiloh Industries, the transaction was not at arm's length, because Shiloh Industries and MTD were closely related parties. Shiloh Auto argues that we have not adopted as part of the definition of an arm's-length sale a requirement that the parties be unrelated—only that they act without compulsion or duress and in their own interests.

{¶ 30} The BTA did not hold that related parties cannot enter into arm's-length transactions. In fact, the BTA recognized that "related parties can and do effect transfers at fair market prices." However, in this instance, the BTA found that the evidence—including MTD's majority ownership interest in Shiloh Industries and the close relationship between the companies' directors—supported a determination that Shiloh Industries and MTD did not act in their individual interests. Rather, the related-party aspects of the acquisition indicated that Shiloh Industries and MTD had acted in their collective, mutual interests. The BTA additionally noted that Shiloh Auto introduced no evidence outside the purchase price to support its claim that the purchase price represented the true value of the assets acquired.

{¶ 31} Contrary to Shiloh Auto's assertion, the BTA's order did not establish a rule of law that transactions between related companies can never be arm's-length transactions. Rather, the BTA recognized that closely related parties may engage in an arm's-length transaction, but a close relationship between parties to a transaction is probative evidence that the parties did not act in their individual interests.

{¶ 32} Shiloh Auto, as the party seeking the reduction in value, had the burden to show that the commissioner's investigation and audit, and the findings and assessments based thereon, were incorrect. *Federated Dept. Stores, Inc., Rike–Kumler Div. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 450 N.E.2d 687. Shiloh Auto presented evidence to the BTA in an attempt to show that the acquisition of MTD Auto was an arm's-length transaction.

{¶ 33} ***Shiloh Auto as Best Suitor.*** Shiloh Auto first contends that MTD made an "informed business judgment" that no other entity would be as interested in acquiring MTD Auto as—or willing to pay more than—Shiloh Industries. Shiloh Auto offered evidence to show that the business attributes of Shiloh Industries and MTD Auto were complementary, while MTD Auto's other potential suitors possessed attributes largely duplicating those of MTD Auto.

{¶ 34} Evidence at the BTA hearing showed that Shiloh Industries and MTD had engaged in informal discussions about merging Shiloh Industries and MTD Auto long before formal discussions were initiated. Formal discussions were

initiated at the behest of Grissinger, Shiloh Industries' chairman, president, and chief executive officer, and Hessler, secretary to MTD's board who was also appointed by MTD to Shiloh Industries' board. Once formal discussions began, MTD negotiated only with Shiloh Industries and never solicited other potential buyers. In fact, testimony indicated that MTD never specifically considered what other suitors might be willing to pay for MTD Auto as compared to what Shiloh Industries would pay.

{¶ 35} We will not overrule BTA findings of fact that are based upon sufficient probative evidence. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874. Moreover, the BTA is vested with wide discretion in determining the weight to be given the evidence and the credibility of witnesses before it. *Westinghouse Elec. Corp. v. Lindley* (1980), 64 Ohio St.2d 31, 32, 18 O.O.3d 212, 413 N.E.2d 1178.

{¶ 36} The record contains sufficient evidence to support the BTA's rejection of Shiloh Auto's claim that Shiloh Industries was MTD Auto's most favorable suitor. Because MTD Auto was not offered to other potential buyers, Shiloh Auto's claim and its evidence in support are largely speculative. And Shiloh Auto presented no other evidence that would establish what a disinterested third party might have paid for MTD Auto.

{¶ 37} *Purchase Price Approved by Unrelated Parties.* Shiloh Auto argues that the purchase price negotiated for MTD Auto was blessed by Baird, the firm hired by Shiloh Industries to act as financial advisor to the transaction. Shiloh Auto maintains that Baird issued an opinion that the amount paid by Shiloh Industries was fair.

{¶ 38} However, the Baird opinion is of little value to Shiloh Auto here. The opinion indicates that the transaction was fair, from a financial point of view, to Shiloh Industries and its shareholders. It does not, however, conclude that the final purchase price—$49,483,786 after all purchase-price adjustments under the purchase agreement—was fair to MTD. In fact, Baird acknowledged that Shiloh Industries was acquiring MTD Auto "at a significant discount to [MTD Auto's] January 31, 1999 net book value of $58.2 million."

{¶ 39} Moreover, Baird expressly disclaims any opinion concerning the value of the various assets and liabilities transferred from MTD Auto to Shiloh Auto. Baird did not undertake or obtain any independent evaluation or appraisal of the assets or liabilities of either Shiloh Industries or MTD Auto. Nor did Baird physically inspect the properties of Shiloh Industries or MTD Auto. In short, the Baird opinion is based solely on financial information dealing mainly with revenue, with no consideration of the fair market value of the assets acquired.

{¶ 40} Shiloh Auto also claims that an MTD lender, who had prohibited any sale of MTD Auto at less than fair market value, specifically acknowledged

Baird's opinion as evidence that the MTD Auto sale was for fair market value. Under a provision of a loan agreement, MTD would be in breach if it had sold MTD Auto for less than fair market value. The loan agreement also required that the buyer provide a fairness opinion from an investment banking firm acceptable to MTD's lender. Shiloh Auto claims that the Baird opinion fulfilled this requirement. We disagree.

{¶ 41} There is no evidence from MTD's lender that it accepted the Baird opinion to satisfy this provision; the only evidence on this subject came not from the lender, but from a former MTD officer. Moreover, as already noted, the Baird opinion indicates only that the transaction was financially fair to Shiloh Industries and does not consider whether the sale price was fair to MTD. The opinion gave no consideration of the fair market value of the assets acquired.

{¶ 42} *MTD's Ownership Interest in Shiloh Industries.* Shiloh Auto contends that MTD is not Shiloh Industries' ultimate parent corporation, either "directly, indirectly, or any other way." Shiloh Auto challenges the findings of the BTA and the commissioner that prior to the sale, MTD owned or controlled, directly or indirectly, 51 percent of the shares of Shiloh Industries common stock. Shiloh Auto now asserts that MTD controlled only 42.8 percent of the outstanding shares of Shiloh Industries because 1.1 million shares—and the voting rights to those shares—were held in trust by MTD's pension fund for the benefit of current and future retirees.

{¶ 43} Tellingly, Shiloh Auto raises this claim for the first time in its third merit brief to this court. Until this point, Shiloh Auto had acknowledged repeatedly throughout the proceedings before the commissioner, the BTA, and this court that MTD was the majority shareholder of Shiloh Industries. Indeed, the record in this case is replete with evidence of MTD's 51 percent ownership of Shiloh Industries.

{¶ 44} Admittedly, there is evidence in the record indicating that 1.1 million shares of Shiloh Industries stock are held in trust by MTD's pension fund. Yet there is no evidence regarding the actual terms and conditions concerning the operation of the pension fund, whether the trustee truly operates independently of MTD, or how the fund's voting rights are exercised. In contrast, Shiloh Industries' proxy statement reflects that MTD intended to vote its 51 percent controlling interest in Shiloh Industries stock in favor of the transaction to satisfy the vote requirement of the National Association of Securities Dealers. In sum, the evidence in the record fully supports the commissioner and BTA findings that MTD owned a 51 percent controlling interest in Shiloh Industries prior to the sale of MTD Auto, and Shiloh Auto has failed to present sufficient evidence to show that those findings were clearly erroneous.

{¶ 45} The determination whether Shiloh Industries' purchase of MTD Auto was an arm's-length transaction for personal property tax purposes is essentially a factual one. The proper scope of our review in true-value cases is not a substitution of the BTA's judgment on factual issues, but to determine from the record whether the BTA decision is supported by any probative evidence. *Aluminum Co. of Am. v. Kosydar* (1978), 54 Ohio St.2d 477, 481, 8 O.O.3d 459, 377 N.E.2d 785. We conclude that there is sufficient evidence in the record to support the BTA's decision that the transaction here was not at arm's length. Accordingly, we reject Shiloh Auto's first proposition of law.

## Proposition of Law No. 2

{¶ 46} In its second proposition of law, Shiloh Auto contends that the amount paid for the assets it acquired from MTD Auto was properly allocated among such assets under Accounting Principles Board Opinion ("APB") No. 16. APB 16 describes an accounting method used when there is a purchase of assets. Under this method, the value of assets is allocated in order of their liquidity (i.e., cash, accounts receivable, inventory, fixed assets, etc.).

{¶ 47} We decline to address this issue because Shiloh Auto's allocation under APB 16 relies exclusively on the purchase price paid to acquire MTD Auto's assets. Unless the sale was at arm's length—a proposition the BTA properly rejected—the purchase price cannot be used for allocation purposes under APB 16. See *Buckeye Internatl., Inc. v. Limbach* (1992), 64 Ohio St.3d 264, 266, 595 N.E.2d 347 (the arm's-length nature of the sale was a precondition for application of APB 16). APB 16 also does not apply where, as here, a transfer of assets occurs between entities under common control. See Accounting Research Bulletin ("ARB") No. 51. Accordingly, we reject Shiloh Auto's second proposition of law.

## The Commissioner's Cross–Appeal

{¶ 48} The commissioner has filed a cross-appeal asking us to address the BTA's directive to the commissioner upon remand. After the BTA issued its decision in this case, the commissioner filed a motion asking the BTA to clarify language remanding the case to the commissioner to apply depreciation rates in accordance with MTD Auto's acquisition history. Shiloh Auto filed its appeal to this court before the BTA could rule on the commissioner's motion.

{¶ 49} The commissioner and Shiloh Auto apparently disagree as to the appropriate true-value schedule that should be applied on remand to the commissioner. The commissioner has asked this court "to adopt, in clear and explicit language, what [the commissioner] believe[s] is the plain meaning and effect of the BTA's directive to the Commissioner upon remand * * *. In other words, [the commissioner] ask[s] the Court to rule on whether [his] amplification of the

BTA's directive is reasonable and lawful." The commissioner claims that to the extent that the BTA's directive might be read differently from the way he argues it should be read, it would be unlawful and unreasonable.

{¶ 50} The cross-appeal is premature. The BTA can decide for itself whether its ruling needs to be clarified in the first instance. If either party is adversely affected by the commissioner's subsequent application of the BTA's order on remand, an appeal may be perfected. The cross-appeal is, therefore, dismissed.

### Conclusion

{¶ 51} Based on the foregoing, Shiloh Auto has failed to meet its burden of introducing sufficient, competent evidence showing that the BTA's decision was unreasonable or unlawful. Sufficient evidence exists in the record to support the findings of the commissioner and the BTA. We further find that the cross-appeal is premature.

{¶ 52} Accordingly, we affirm the BTA's decision as to Shiloh Auto's appeal, and we dismiss the commissioner's cross-appeal.

Decision affirmed
and cross-appeal dismissed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., concurs in judgment only.

———————

Jones Day and Charles M. Steines, for appellant and cross-appellee.

Marc Dann, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee and cross-appellant.