[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Emerson v. Erie Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-865.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-865

EMERSON, APPELLEE, *v.* ERIE COUNTY BOARD OF REVISION ET AL.,
APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Emerson v. Erie Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-865.]**

*Taxation—Real-property valuation—Related parties—A certified appraisal can be used to show that the purchase price in a sale between related parties reflected fair market value.*

(No. 2014-1794—Submitted January 10, 2017—Decided March 14, 2017.)

APPEAL from the Board of Tax Appeals, No. 2012-Y-2287.

_____

**Per Curiam.**

{¶ 1} This case involves two adjoining parcels of real property in Erie County, near Sandusky.  The property owner, appellee David Emerson ("Emerson"), challenged the Erie County auditor's valuations for tax year 2011. He argued to the Erie County Board of Revision ("BOR") that his September 2009

purchase of the parcels established lower true values because it was a recent arm's-length transaction. The BOR rejected his claim and retained the auditor's valuations. Emerson appealed to the Board of Tax Appeals ("BTA"), which reversed and valued the properties according to the sale price. The auditor and the BOR (collectively, "the county") jointly appealed to this court.

{¶ 2} The county asserts two propositions of law. In its first proposition, it contends that we must reverse the BTA's decision and reinstate the BOR's valuation because the sale was not a recent arm's-length transaction. The county says that because Emerson purchased the parcels from his brother, who was acting as trustee for a pension fund, and because Emerson did not prove that he and his brother had separate interests in carrying out the transfer, the sale was not arm's length in nature. The county also argues that it rebutted the recency of the sale with evidence of changed circumstances between the date of the sale and the tax-lien date. In its second proposition, the county argues that the BTA failed to address the appraisal and the related testimony that it presented at the BTA hearing. The county says that even if we do not reverse outright, we must remand to the BTA with instructions to fully address all the evidence. We reject both propositions and affirm the BTA's decision.

## I. Facts and Procedural History

{¶ 3} The two parcels together constitute 1.9353 acres near the intersection of Milan Road (U.S. Route 250) and State Route 2 outside Sandusky. The parcels can be accessed from Baywinds Drive, a private road that connects to Milan Road. The larger of the two parcels, comprising 1.7393 acres, has no direct access to Baywinds Drive or any other roadway and is partially developed with an asphalt parking lot. The smaller parcel, comprising 0.196 acres, is undeveloped and abuts both Baywinds Drive and the larger parcel.

{¶ 4} Mueller Electric Employee Pension Fund acquired the parcels for $310,000 in 2006. According to the pension fund's trustee, Emerson's brother

Scott Emerson, the property was to be used for auxiliary parking for Maui Sands Resort, which was being developed on the other side of Baywinds Drive. In September 2009, the pension fund sold the parcels to Emerson for $180,000. Before the sale, Scott Emerson had obtained an appraisal from a state-certified general appraiser who determined the market value of the property to be $170,000 as of July 7, 2009. The appraisal noted that the property's intended use was no longer viable because the Maui Sands development was in receivership at the time. It also explained that access to the property via Baywinds Drive from Milan Road remained "very difficult." The appraisal used a sales-comparison approach and relied on the sales of three vacant parcels in Erie County between September 2003 and November 2006.

{¶ 5} The auditor's aggregate valuation of the two parcels for tax year 2011 was $328,270. Emerson challenged the valuations, alleging that the aggregate value should be $180,000—the price he had paid 15 months before the January 1, 2011 tax-lien date. Under the law in effect at the time, if the BOR found that the purchase was sufficiently recent to the tax-lien date and arm's length in nature, it was required to treat the sale price as the property's true value. *See Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 13. Emerson acknowledged that he had purchased the parcels from his brother, who was acting as trustee for the pension fund, but he submitted the July 2009 appraisal with his BOR complaint in an effort to validate the arm's-length nature of the sale. Also, at the BOR hearing, Scott Emerson explained that the value declined after 2006 because Maui Sands no longer needed the land for parking. He said the land was "undevelopable" because significant improvements were needed to make Baywinds Drive safely accessible from Milan Road. The BOR retained the auditor's valuation, and Emerson appealed to the BTA.

{¶ 6} At the BTA, Scott Emerson again testified that the land could not be developed. He explained that the existing parking lot on the larger parcel could not be accessed directly from Baywinds Drive and that it was far from certain that the adjacent property owner would grant an easement to provide access to the road. He also said that the cost of improving access to Baywinds Drive from Milan Road made development unfeasible. According to Scott Emerson, he sold the property to his brother on behalf of the pension fund to recover the pension fund's investment.

{¶ 7} For its part, the county introduced an appraisal report from Richard Hoffman, a member of the Appraisal Institute, at the BTA hearing. Hoffman opined that the market value of the property as of January 1, 2011, was $283,000. He used a sales-comparison approach and relied on the sales of three vacant parcels in Erie County that occurred in 2010 and 2011. He acknowledged the obstacles to development identified by Scott Emerson but testified that he took those concerns into account in reaching his conclusion, stating that his valuation would have been $152,405 higher if not for the access problems concerning the larger parcel. Although he acknowledged Scott Emerson's concerns about the intersection of Baywinds Drive and Milan Road, Hoffman claimed to have knowledge, through his work on other nearby projects, that the intersection would be improved with public funds. Hoffman was unwilling to disclose his source for that claim, citing confidentiality agreements with other clients. The intersection remained unimproved at the time of the BTA hearing in January 2013.

{¶ 8} The BTA reversed the BOR's decision and valued the property at $180,000. The BTA acknowledged that a sale between related parties ordinarily will not qualify as an arm's-length transaction but found that Emerson, by submitting the July 2009 appraisal, "satisfied his burden to demonstrate that the August 2009 sale price was the best indication of the subject properties' values." The BTA did not mention Hoffman's appraisal or testimony. The BTA denied the

4

county's motion for reconsideration. The county appealed to this court as a matter of right.

## II. Analysis

### A. Emerson demonstrated a recent arm's-length sale

{¶ 9} Under the version of R.C. 5713.03 in effect on the tax-lien date, "when [a] property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.' " *Berea*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, at ¶ 13, quoting former R.C. 5713.03, Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722. Under this rule, "the only rebuttal lies in challenging whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13. The county challenges both aspects of the sale in this appeal.

### 1. Arm's-length nature

{¶ 10} The county first argues that the sale involving the Emerson brothers cannot be an arm's-length transaction because it was between "related parties." "The allegation that the parties to a sale are related bears on whether they are self-interested for purposes of R.C. 5713.03. That is so because related parties may be pursuing the identical interest of common owners rather than acting as separately interested, typically motivated actors in the marketplace." *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955, ¶ 33. A transaction involving related parties ordinarily will not qualify as an arm's-length sale, but such a sale can qualify if the proponent "affirmative[ly] demonstrat[es] that the price actually reflects fair market value in spite of the relationship of the parties." *Id*.

**{¶ 11}** As a preliminary matter, it is undisputed that Scott Emerson did not act in his individual capacity when he sold the parcels to his brother. As trustee of Mueller Electric Employee Pension Fund, he held the property as a fiduciary " 'subject to an equitable obligation to keep or use [it] for the benefit of' " the fund's beneficiaries. *See Hill v. Irons*, 160 Ohio St. 21, 26, 113 N.E.2d 243 (1953), quoting 1 Bogert, *Trusts and Trustees*, Section 1. Because Scott Emerson acted as a fiduciary, the sale was not between brothers; it was between Emerson and the pension fund. Thus, one might argue that the transaction was not between "related parties" at all. Emerson, however, did not file a brief in this appeal and did not assert that argument below. We therefore assume without deciding that the sale was between related parties, notwithstanding that one party acted as a fiduciary.

**{¶ 12}** Under our holding in *N. Royalton*, Emerson needed to show that the $180,000 purchase price actually reflected fair market value. *N. Royalton* at ¶ 33. The BTA found that he satisfied this burden by submitting an appraisal report that valued the parcels at $170,000 two months before the sale. We must decide whether that finding was "reasonable and lawful." R.C. 5717.04.

**{¶ 13}** This raises questions regarding both the legal sufficiency and the weight of Emerson's evidence. We consider questions involving legal sufficiency—for example, whether a certain type of evidence tends to prove an ultimate fact—de novo. *See Ace Steel Baling, Inc. v. Porterfield*, 19 Ohio St.2d 137, 142, 249 N.E.2d 892 (1969). Determinations involving the weight of evidence, on the other hand, are purely factual, and we will reverse them only if the BTA has abused its discretion. *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 15.

**{¶ 14}** We hold that a certified appraisal, such as the one that Emerson presented to the BOR, can be used to show that the purchase price in a sale between related parties reflected fair market value. We have long recognized that appraisals of market value are, generally speaking, reliable and probative evidence of the true

value of real property.[1]  *See Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 54 N.E.3d 1177, 2016-Ohio-371, ¶ 25, citing *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964).  It follows that when a party to a sale solicits a certified appraisal to help determine the sale price that fact tends to prove that the sale reflected fair market value.

{¶ 15} The county offers no compelling reason for us to hold that an appraisal contemporaneous to the sale could not satisfy a party's burden under *N. Royalton*.  The county's principal argument is that Emerson could not demonstrate the arm's-length nature of his purchase solely with evidence of a contemporaneous appraisal because, under *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23, 25, 546 N.E.2d 932 (1989), an arm's-length sale "generally takes place in an open market," and there is no evidence of an open-market sale here.  This argument fails, however, because establishing that it occurred on the open market is not the only way to prove that a sale reflected fair market value.  *N. Royalton* at ¶ 29.  Neither *Walters* nor *N. Royalton* prevents us from holding that a contemporaneous appraisal, standing alone, can affirmatively demonstrate that the price actually reflected fair market value.  *Id*. at ¶ 33.

{¶ 16} The county also characterizes the appraisal as "inadmissible hearsay," suggesting that it was not properly before the BTA.  But the county did not develop this argument, nor did it object to the appraisal on hearsay (or any other) grounds in the proceedings below.  We hold that the county has waived any argument that the appraisal was inadmissible.  *See Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d

---

[1] The facts here differ from those in *Berea*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, at ¶ 13, in which we held that a complainant may not use an appraisal to depart from a recent arm's-length sale price for purposes of valuation under former R.C. 5713.03.  Emerson did not use the appraisal to *adjust* the contract sale price but to *confirm* that the price reflected fair market value.

268, ¶ 20-21. What is more, even now, the county does not challenge Scott Emerson's testimony that the parties negotiated based on the appraisal and agreed on a price that was $10,000 *more* than the appraised market value. Therefore, there was no plain error in considering the July 2009 appraisal, and as a result, there was ample evidence for the BTA to conclude that the sale price actually reflected fair market value notwithstanding the relatedness of the parties.

{¶ 17} The county nevertheless argues that the July 2009 appraisal is not persuasive—that it cannot overcome other evidence showing that the parties had identical interests. In this respect, the county, relying on Scott Emerson's testimony that he sold the property to recover the pension fund's investment, argues that "David Emerson merely took the property off his brother's hands to reduce some of his brother's loss." This argument is unpersuasive because there is no evidence that Emerson shared his brother's interest in reducing the pension fund's losses. And the county's premise—that there were losses to reduce—*supports* Emerson's claim that the value of the parcels had significantly decreased since 2006.

{¶ 18} Contrary to the county's argument, Scott Emerson's testimony does not prove that the parties to the sale had identical interests, nor does it undermine the general reliability or probativeness of the July 2009 appraisal. Therefore, the county has not shown that the BTA acted unreasonably or unlawfully in weighing the evidence concerning the arm's-length nature of the sale.

*2. Recency*

{¶ 19} The county next argues that Hoffman's appraisal and testimony rebutted Emerson's claim by showing that the September 2009 sale was not sufficiently recent to the January 1, 2011 tax-lien date. Ordinarily, a sale that occurs so close to the tax-lien date is considered to be "within a reasonable length of time" under R.C. 5713.03. *See Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004, ¶ 26. But temporal proximity "is not the sole factor affecting recency." *Worthington City Schools Bd.*

*of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 32. "[R]ecency 'encompasses all factors that would, by changing with the passage of time, affect the value of the property.' " *Id.*, quoting *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 35.

{¶ 20} Although it is possible under *Cummins* for a party to rebut the element of recency, the county did not challenge the recency of the sale before the BTA. We will "not consider any matter not presented to the Board of Tax Appeals." *Neil House Hotel Co. v. Franklin Cty. Bd. of Revision*, 147 Ohio St. 231, 70 N.E.2d 646 (1946), paragraph one of the syllabus; *see also Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 144 Ohio St.3d 549, 2015-Ohio-4837, 45 N.E.3d 968, ¶ 14-15. The county waived any argument concerning the recency of the sale by failing to raise it at the BTA.

**B. The county cannot rebut the sale price with an appraisal**

{¶ 21} In its second proposition, the county argues that we must remand to the BTA because the BTA never addressed the Hoffman appraisal. The county relies on *Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 455, 462, 687 N.E.2d 426 (1997), in which we held that the BTA had an affirmative duty to set forth its basis for accepting or rejecting the multiple appraisals that had been presented. Because we have rejected the county's first proposition of law, *Dublin Senior Community* is inapplicable.

{¶ 22} Once Emerson showed that the September 2009 sale was a recent arm's-length transaction, the BTA had to consider the sale price to be the true value of the property for taxation purposes. *See Berea*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, at ¶ 13. The county could avoid application of that rule only by proving that the sale was either not arm's length in nature or not sufficiently recent to the tax-lien date. *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, at ¶ 13. There is no need for the BTA to consider the Hoffman appraisal anew because it does not speak to the arm's-length nature of the sale; it

merely proposes an alternative appraisal-based valuation—precisely what *Berea* prohibits. And even if Hoffman's appraisal or testimony identified factors that could bring the recency of the sale into question, the county waived that argument by failing to raise it with the BTA. We therefore reject the county's second proposition of law.

**{¶ 23}** Because we reject both of the county's propositions of law, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Rich & Gillis Law Group, L.L.C., Kelley A. Gorry, and James R. Gorry, for appellants.

_____