[Cite as *Gallick v. Franklin Cty. Bd. of Revision*, 2018-Ohio-818.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | **No. 15AP-182** |
| | | (C.P.C. No. 14CV-7188) |
| | : | **No. 15AP-190** |
| John J. Gallick, | | (C.P.C. No. 14CV-7189) |
| | : | **No. 15AP-233** |
| Appellant-Appellant, | | (C.P.C. No. 14CV-7185) |
| | : | **No. 15AP-419** |
| v. | | (C.P.C. No. 14CV-7193) |
| | : | **No. 15AP-564** |
| Franklin County Board of Revision et al., | | (C.P.C. No. 14CV-7190) |
| | : | **No. 15AP-837** |
| Appellees-Appellees. | | (C.P.C. No. 14CV-7187) |
| | : | **No. 16AP-392** |
| | | (C.P.C. No. 14CV-7186) |
| | : | **No. 16AP-393** |
| | | (C.P.C. No. 14CV-7194) |
| | : | |
| | | **(REGULAR CALENDAR)** |
| | : | |

D E C I S I O N

Rendered on March 6, 2018

**On brief:** *John J. Gallick*, pro se. **Argued:** *John J. Gallick*.

**On brief:** *Rich & Gillis Law Group*, *Mark H. Gillis*, and *Richelle L. Thoburn*, for appellee Board of Education of the Columbus City Schools. **Argued:** *Richelle L. Thoburn*.

APPEALS from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Appellant, John J. Gallick, appeals judgments of the Franklin County Court of Common Pleas that affirmed decisions of the Franklin County Board of Revision ("BOR")

and denied Gallick's motions for new trial. For the following reasons, we reverse some judgments and dismiss the appeals of other judgments.

{¶ 2} In July 2012, Gallick purchased two adjacent, identical apartment buildings located at 1688 and 1704 East Livingston Avenue in Columbus, Ohio (hereinafter collectively referred to as "the Livingston properties"). Gallick bought the two buildings in a single sale and paid a total of $120,000. Each building contained 15 units, and each unit was assigned its own tax parcel number.

{¶ 3} For tax years 2012 and 2013, the Franklin County Auditor ("Auditor") appraised the units at the following true values:

### 1688 East Livingston Avenue

| Tax Parcel Number | True Value |
| --- | --- |
| 010-178688-00 (Unit A) | $9,300 |
| 010-178689-00 (Unit B) | $9,300 |
| 010-178690-00 (Unit C) | $14,000 |
| 010-178691-00 (Unit D) | $14,400 |
| 010-178692-00 (Unit E) | $14,400 |
| 010-178693-00 (Unit F) | $14,400 |
| 010-178694-00 (Unit G) | $14,400 |
| 010-178695-00 (Unit H) | $14,400 |
| 010-178696-00 (Unit J) | $14,400 |
| 010-178697-00 (Unit K) | $15,800 |
| 010-178698-00 (Unit L) | $14,000 |
| 010-178699-00 (Unit M) | $14,000 |
| 010-178700-00 (Unit N) | $14,000 |
| 010-178701-00 (Unit P) | $15,800 |
| 010-178702-00 (Unit Q) | $15,800 |

### 1704 East Livingston Avenue[1]

| Tax Parcel Number | True Value |
| --- | --- |
| 010-178703-00 (Unit A) | $14,000 |
| 010-178704-00 (Unit B) | $14,400 |
| 010-178705-00 (Unit C) | $9,300 |
| 010-178712-00 (Unit K) | $15,800 |

---

[1] The valuations of units D, E, F, G, H, and J of 1704 East Livingston Avenue are not at issue in this appeal. Consequently, those units do not appear in this list.

| | |
|---|---|
| 010-178713-00 (Unit L) | $14,000 |
| 010-178714-00 (Unit M) | $14,400 |
| 010-178715-00 (Unit N) | $14,000 |
| 010-178716-00 (Unit P) | $15,800 |
| 010-178717-00 (Unit Q) | $15,800 |

{¶ 4} On March 22, 2013, Gallick filed multiple complaints with the BOR seeking a decrease in the valuation of each unit. Each complaint challenged the valuation of three units, resulting in 10 complaints (covering all 30 units). In response to each complaint, appellee, the Board of Education of the Columbus City School District ("Board of Education"), filed counter-complaints seeking no change in the Auditor's valuations. The BOR combined the complaints and counter-complaints, and it held a single hearing on them.

{¶ 5} At the April 10, 2014 hearing, Gallick testified and presented documentary evidence. Gallick explained that he had purchased the Livingston properties after a realtor informed him that the properties were on the market. Without asking the offering price, Gallick placed a bid of $120,000 for both buildings. The previous owner accepted the bid, and the closing occurred in July 2012. Gallick presented the BOR with copies of the conveyance fee statement and deed to prove the occurrence of the sale and the sale price.

{¶ 6} According to Gallick, the true value of each unit was $4,000, which he arrived at by dividing the $120,000 purchase price equally between the two buildings, and then dividing $60,000 by 15, the number of units in each building. Gallick, who "own[s] that whole block," also testified that $4,000 was "the going price" for apartment units in the area. (Tr. at 8, 14.) The Board of Education presented no evidence or argument regarding the Livingston properties at the hearing.

{¶ 7} In decisions issued June 13, 2014, the BOR accepted $4,000 as the true value of each unit for the 2012 tax year. However, the BOR retained the Auditor's valuation of each unit for the 2013 tax year. Gallick appealed the BOR's decisions as to the valuations for the 2013 tax year to the trial court pursuant to R.C. 5717.05.

{¶ 8} Although the trial court did not consolidate all the appeals into one case, the majority of the appeals proceeded similarly. Gallick and the Board of Education filed virtually identical briefs in each appeal. In the appeals involving the units listed above, the

trial court affirmed the decisions of the BOR. In some of the appeals, Gallick moved for a new trial pursuant to Civ.R. 59. With one exception, the trial court denied those motions.[2]

{¶ 9} We have eight appeals involving the Livingston properties before this court: (1) appeal No. 15AP-233, which involves units A, B, and C of 1688 East Livingston Avenue; (2) appeal No. 16AP-392, which involves units D, E, and F of 1688 East Livingston Avenue; (3) appeal No. 15AP-837, which involves units G, H, and J of 1688 East Livingston Avenue; (4) appeal No. 15AP-182, which involves units K, L, and M of 1688 East Livingston Avenue; (5) appeal No. 15AP-190, which involves units N, P, and Q of 1688 East Livingston Avenue; (6) appeal No. 15AP-564, which involves units A, B, and C of 1704 East Livingston Avenue; (7) appeal No. 15AP-419, which involves units K, L, and M of 1704 East Livingston Avenue; and (8) appeal No. 16AP-393, which involves units N, P, and Q of 1704 East Livingston Avenue.

{¶ 10} We consolidated the eight appeals. In his appellant's brief, Gallick assigns the following errors:

> [1.] The Board of Revision and the lower courts erred as a matter of law by failing to base their property tax valuations upon the recent arm's-length sale prices of Appellant's several properties when the arm's-length nature of the sales were not rebutted by the BOR or the Appellees, no new appraisal was conducted by the auditor, no significant improvements were made to the properties, and no other factors existed for the Auditor or the BOR to dramatically increase the property valuations notwithstanding the recency of the arm's-length sales, thus requiring a remand to the Board of Revision and an order for the BOR to revert back to the arm's-length sales prices for tax valuation purposes.

> [2.] The BOR and the lower courts erred by failing to take into account that the valuations by the auditor and decisions upholding same by the Board of Revision are not entitled to a presumption of validity when monumental increases in property valuations for all properties subject to this appeal were unsustainable as a matter of fact and law when the auditor failed to conduct a formal up-to-date appraisal, failed to provide any comparable sales data, and failed to substantiate that any significant improvements had been made to the several properties, warranting reversal to the BOR and

---

[2] In appeal No. 15AP-190, rather than denying Gallick's motion for a new trial, the trial court deemed the motion inactive.

Franklin County Auditor and a decrease in property valuations commensurate with the original purchase prices.

[3.] The BOR and the lower courts erred as a matter of fact and law by applying the incorrect legal standard to Appellant's testimony and evidence presented to the BOR despite it being reliable, substantial and probative, by failing to shift the burden of proof to the BOR based upon Appellant's testimony, and by failing to render an independent judgment to determine the taxable value of the subject properties when there was no evidence and no new appraisal supporting the auditor's valuations.

[4.] The lower courts abused their discretion by failing to allow Appellant's offer of additional evidence or at the very least ordering a hearing on the evidence, and a hearing on the merits of Appellant's claims.

[5.] The lower courts erred by denying, failing to conduct merit reviews, and failing to hold hearings on Appellant's motion for relief from judgment and motions for new trial.

[6.] The current property taxation scheme violates due process because it fails to give meaningful notice to the taxpayer why property valuations are increased, fails to provide for reasons in decisions rendered by the BOR, and leaves courts on appeal to guess at why valuations occurred causing insufficient judicial review, leaving the taxpayer and public guessing why and how valuations are rendered making it impossible to defend against the valuation thus placing an improper burden of proof against the taxpayer and an improper presumption that the auditor's valuation is correct.

{¶ 11} Before we begin our review of the merits of Gallick's assignments of error, we must determine which of his eight appeals are properly before this court. To do that, we must consider whether Gallick filed all of his appeals in a timely manner.

{¶ 12} "An appeal as of right shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4." App.R. 3(A). If an appellant fails to meet the timing requirements of App.R. 4, the court of appeals lacks jurisdiction to hear the appeal. *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, ¶ 17. A court of appeals without jurisdiction must dismiss the appeal, since the court does not have the power or

authority to review the issues involved. *Fougere v. Estate of Fougere*, 10th Dist. No. 17AP-72, 2017-Ohio-7905, ¶ 10.

{¶ 13} Pursuant to App.R. 4(A)(1), "a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal required by App.R. 3 within 30 days of that entry." The timing requirement of App.R. 4(A)(1) is subject to App.R. 4(A)(3), which provides that, "[i]n a civil case, if the clerk has not completed service of the order within the three-day period prescribed in Civ.R. 58(B), the 30-day period[ ] * * * begin[s] to run on the date when the clerk actually completes service." Thus, the clerk's failure to complete service within three days of a final order's entry tolls the 30-day appeal period until service is accomplished. On the other hand, if the clerk timely complies with Civ.R. 58(B), then the 30-day appeal period begins to run on the date of the final order's entry.

{¶ 14} App.R. 4(B) sets forth some exceptions to the timing requirements of App.R. 4(A). Of relevance to this appeal, under App.R. 4(B)(2)(b), if a party files a "timely and appropriate" motion for a new trial under Civ.R. 59, "then the time for filing a notice of appeal from the judgment or final order in question begins to run as to all parties when the trial court enters an order resolving" the motion. Importantly, in order for a party to benefit from the tolling effect of App.R. 4(B)(2)(b), the motion for a new trial cannot be untimely filed or inappropriate under the circumstances. *See Besman v. Leventhal*, 8th Dist. No. 104414, 2017-Ohio-464, ¶ 13 (refusing to apply the App.R. 4(B)(2)(b) exception because the appellant's motion for a new trial was inapplicable to the type of proceeding pending before the trial court); *Citibank (S.D.) N.A. v. Abu-Niaaj*, 2d Dist. No. 2011 CA 45, 2012-Ohio-2099, ¶ 9 (holding that an untimely motion for a new trial did not extend the 30-day period for appealing a final order).

{¶ 15} Here, Gallick seeks to rely on the App.R. 4(B)(2)(b) exception in three cases: 15AP-233, 15AP-419, and 15AP-837. In each of these cases, the trial court entered a final order affirming the BOR's decision. On same day as the entry of each final order, the clerk served notice of that order on the parties and noted service on the docket as required by Civ.R. 58(B). Thus, under App.R. 4(A), Gallick had 30 days from the date of each final order's entry to file his notice of appeal. Gallick, however, failed to file notices of appeal within the 30-day period. Instead, in each case, he moved for a new trial. In all three cases, Gallick only filed a notice of appeal after the trial court denied him a new trial. To the extent

that Gallick seeks to appeal the judgments affirming the BOR's decisions, these notices of appeal are only timely if the App.R. 4(B)(2)(b) exception extends the filing deadlines.

{¶ 16} Whether or not Gallick may claim an extension based on App.R. 4(B)(2)(b) depends on whether his motions for new trial were appropriate under the circumstances. This determination, in turn, requires this court to consider two issues: (1) whether Civ.R. 59, which governs motions for new trial, applies to appeals initiated under R.C. 5717.05, the statutory basis for Gallick's appeals of the BOR's decisions to the trial court, and (2) whether Gallick filed his motions after trials had occurred in the trial court.

{¶ 17} With few exceptions, the Ohio Rules of Civil Procedure "prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction at law or in equity." Civ.R. 1(A). However, "to the extent that [the rules] would by their nature be clearly inapplicable," they do not apply to procedure in "special statutory proceedings." Civ.R. 1(C)(8). Because Civ.R. 1(C)(8) only exempts the application of a procedural rule if it is "clearly inapplicable," the Ohio Rules of Civil Procedure apply in special statutory proceedings adversary in nature unless a good and sufficient reason exists not to apply to the rules. *Hambuechen v. 221 Mkt. N., Inc.*, 143 Ohio St.3d 161, 2015-Ohio-756, ¶ 7; *Ramsdell v. Ohio Civil Rights Comm.*, 56 Ohio St.3d 24, 27 (1990).

{¶ 18} An administrative appeal filed pursuant to a statute, such as an appeal initiated under R.C. 5717.05, is a special statutory proceeding. *Middlebrook v. United Collection Bur., Inc.*, 10th Dist. No. 17AP-280, 2017-Ohio-8587, ¶ 8. Thus, Civ.R. 59 applies in such appeals unless R.C. 5717.05 renders that rule clearly inapplicable. This court has found that Civ.R. 59 is not clearly inapplicable to administrative appeals where the trial court reviews de novo questions of law and fact. *In re Appeal of Neff*, 10th Dist. No. 85AP-289 (Mar. 4, 1986); *Quick v. Wolfe*, 10th Dist. No. 81AP-561 (Aug. 20, 1981). In an R.C. 5717.05 appeal, a trial court reaches a decision de novo. *Black v. Bd. of Revision*, 16 Ohio St.3d 11, 14 (1985). Consequently, we conclude that Civ.R. 59 applies to the appeals at issue here.

{¶ 19} Our conclusion, however, does not end our analysis. Although the administrative nature of a case may not preclude a motion for a new trial, such a motion is only appropriate in cases where a trial has occurred. *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-307, 2012-Ohio-6232, ¶ 13 (holding that "a motion for a new trial properly lies

only after a trial"). Absent a trial, a motion for a new trial is a nullity. *State ex rel. Batten v. Reece*, 70 Ohio St.2d 246, 248 (1982).

{¶ 20} A proceeding is a trial for Civ.R. 59 purposes when the indicia of trial substantially predominate in the proceeding. *First Bank v. Mascrete, Inc.*, 79 Ohio St.3d 503, 507 (1997). Those indicia include: (1) whether pleadings initiated the proceeding, (2) whether the proceeding took place in court, (3) whether a judge or magistrate was present and presided over the proceeding, (4) whether the parties or their counsel were present, (5) whether the parties or counsel introduced evidence, (6) whether the parties or counsel presented arguments in court, (7) whether a judge or magistrate decided issues of fact, (8) whether the issues decided were central or ancillary to the primary dispute between the parties, and (9) whether a judgment was rendered on the evidence. *Id.*

{¶ 21} After considering the above indicia, courts have found motions for new trials appropriate where there has been an in-court hearing succeeded by a judgment ruling on the issues argued and evidence heard at the hearing. *Fougere*, 10th Dist. No. 17AP-72, 2017-Ohio-7905, at ¶ 15. Here, no such hearings happened. In each of the three cases at issue, no proceedings occurred where the parties or counsel presented evidence and argument in court to a trial judge or magistrate. Because there were no trials in the three cases at issue, Gallick's motions for new trial were inappropriate and their filing did not toll the 30-day period for appealing the judgments affirming the BOR's decisions. Gallick, therefore, did not timely initiate appeals of the judgments affirming the BOR's decisions in appeal Nos. 15AP-233, 15AP-419, and 15AP-837. Thus, we lack jurisdiction over those judgments.

{¶ 22} Next, we must decide whether we may review the judgments in appeal Nos. 15AP-233, 15AP-419, and 15-837 that denied Gallick new trials. Although Gallick timely appealed those judgments, another problem stands in the way of our review. As we explained above, a motion for a new trial is a nullity unless it is filed after a trial has occurred. *Batten*, 70 Ohio St.2d at 248. In the absence of a preceding trial, a judgment entered on a motion for a new trial is also a nullity and a party cannot appeal from such a judgment. *See Johnson v. Geico Homesite, Inc.*, 6th Dist. No. OT-17-003, 2017-Ohio-7273, ¶ 8 ("[A]n appellate court cannot consider an appeal from a nullity."); *Levy v. Ivie*, 195 Ohio App.3d 251, 2011-Ohio-4055, ¶ 15 (10th Dist.) (holding that a judgment deciding a null

motion is also a nullity and cannot be appealed). Here, because no trials occurred in the three cases at issue, Gallick's motions for new trial and the judgments deciding those motions constituted nullities. Gallick, therefore, cannot appeal those judgments to this court. Accordingly, we dismiss appeal Nos. 15AP-233, 15AP-419, and 15AP-837 in their entirety.

{¶ 23} Having determined that only appeal Nos. 15AP-182, 15AP-190, 15AP-564, 16AP-392, and 16AP-393 are properly before this court, we turn to reviewing Gallick's assignments of error. By his first assignment of error, Gallick argues that the trial court erred in ignoring the arm's-length sale that occurred five and one-half months prior to the tax lien date. Gallick contends that the sale price constitutes the best evidence of the true value of each unit, and consequently, the trial court erred in refusing to decrease the valuations of each unit based on the $4,000 per unit sale price. We agree.

{¶ 24} In an R.C. 5717.05 appeal, the party appealing the board of revision's decision bears the burden of proving its right to a reduction or increase in the board of revision's determination of value. *CABOT III-OH1M02, LLC v. Bd. of Revision*, 10th Dist. No. 13AP-232, 2013-Ohio-5301, ¶ 26. The trial court must consider the evidence heard by the board of revision and any additional evidence admitted by the trial court, and apply its independent judgment to determine the taxable value of the subject property. *Black*, 16 Ohio St.3d at 14; *CABOT III-OH1M02, LLC* at ¶ 16. On an appeal of the trial court's judgment, an appellate court must decide whether the trial court abused its discretion in its valuation determination. *Black* at paragraph one of the syllabus; *CABOT III-OH1M02, LLC* at ¶ 16.

{¶ 25} The Ohio Constitution provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value." Ohio Constitution, Article XII, Section 2. Consistent with that constitutional mandate, R.C. 5713.01(B) requires county auditors to appraise real property "at its true value in money."

{¶ 26} R.C. 5713.03 governs how the true value of real property is determined. From 1976 to 2012, R.C. 5713.03 stated that, if any tract, lot, or parcel of real estate "ha[d] been the subject of an arm's length sale between a willing seller and willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor *shall* consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes."

(Emphasis added.) Am.Sub.H.B. No. 920, 136 Ohio Laws, Part II, 3182, 3247. Interpreting this provision, the Supreme Court of Ohio held that former R.C. 5713.03 required the sale price of a recent, arm's-length transaction to be the true value of the property. *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, ¶ 13, superseded by statute as stated in *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, ¶ 26. The court later explained that former R.C. 5713.03 "reject[ed] * * * appraisal evidence of the value of the property whenever a recent, arm's-length sale price has been offered as evidence of value." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, ¶ 13, superseded by statute as stated in *Terraza 8, L.C.C.* at ¶ 26.

{¶ 27} In 2012, the General Assembly significantly changed the language of R.C. 5713.03. In relevant part, the General Assembly replaced "shall" with "may," so the statute now reads, "the auditor *may* consider the sale price * * * to be the true value for taxation purposes." (Emphasis added.) 2012 Am.Sub.H.B. No. 487. House Bill 487 went into effect on September 10, 2012. Consequently, the amended statute governs all valuations for tax year 2013, which are determined as of January 1, 2013.[3] *Terraza 8, L.L.C.* at ¶ 18. Here, because Gallick challenges the valuations for tax year 2013, amended R.C. 5713.03 applies to these appeals.

{¶ 28} Although amended R.C. 5713.03 overrode the holding of *Berea*, it did not invalidate two rebuttable presumptions applied in valuation cases. *Terraza 8, L.L.C.* at ¶ 31-33. First, the presumption that "a submitted sales price 'has met all the requirements that characterize true value' " remains. *Terraza 8, L.L.C.* at ¶ 32, quoting *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327 (1997). Likewise, under amended R.C. 5713.03, the presumption that " '[t]he best evidence of the "true value of money" of real property is an actual, recent sale of the property in an arm's-length transaction' " survives. *Id.* at ¶ 33, quoting *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129 (1977), paragraph one of the syllabus; *accord Mann v. Cuyahoga Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2017-Ohio-8820, ¶ 12 ("Under the version of R.C.

---

[3] " '[T]he first day of January of the tax year in question is the crucial valuation date for tax assessment purposes.' " *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, ¶ 16, quoting *Freshwater v. Belmont Cty. Bd. of Revision*, 80 Ohio St.3d 26, 29-30 (1997).

5713.03 that applies to tax year 2013, * * * a price from a recent arm's-length sale is not conclusive evidence of a property's value but it nevertheless 'constitute[s] the best evidence of the property's value.' ").

{¶ 29} To employ these presumptions, a proponent of a sale need not affirmatively demonstrate with extrinsic evidence that a sale price reflects the value of the property. *Terraza 8, L.L.C.* at ¶ 32. Instead, the proponent of the sale must only present basic documentation of the sale, such as the conveyance fee statement and deed. *Id.*; *Buckeye Terminals, L.L.C. v. Franklin Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2017-Ohio-7664, ¶ 20 ("The conveyance fee [statement] and deed create a rebuttable presumption that the sale met the requirements that characterize true value."). If this initial burden is met, the opposing party then has the burden of going forward with rebuttal evidence showing that the sale price does not, in fact, reflect the property's true value.[4] *Terraza 8, L.L.C.* at ¶ 32. To satisfy its burden, the opposing party may present evidence showing that the sale was not at arm's length or not recent to the tax lien date. *Huber Heights City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, ___ Ohio St.3d ___, 2017-Ohio-8819, ¶ 11. Where the opposing party fails to demonstrate a reason to disregard the sale price as an indicator of value, then the sale price is the best evidence of the property's true value. *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, ¶ 18.

{¶ 30} Here, Gallick provided the BOR with copies of the conveyance fee statement and deed showing the transfer of the Livingston Avenue properties to him. The conveyance fee statement is dated July 16, 2012 and reflects a sale price of $120,000 for both Livingston properties. With the presentation of this evidence, rebuttable presumptions arose that the sale price met all the requirements of true value and constituted the best evidence of the true value of the Livingston properties.[5] Thus, the Board of Education had the burden to

---

[4] The party against whom a presumption is directed has the burden to present evidence to rebut the presumption. *Cincinnati School Dist. Bd. of Edn.* at 328. However, the burden of proof remains on the party on whom it was originally cast. *Id.*; *accord Dauch v. Erie Cty. Bd. of Revision*, 149 Ohio St.3d 691, 2017-Ohio-1412, ¶ 20 ("The ultimate burden of proof d[oes] not shift.").

[5] Gallick purchased the Livingston properties in a bulk sale, i.e., " 'a sale of numerous real estate parcels at an aggregate price as part of a single deal.' " *Buckeye Terminals, L.L.C.* at ¶ 17, quoting *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, ¶ 15. Ordinarily, "a bulk sale raises the additional question 'whether the proffered allocation of [the] bulk sale price to the particular parcel[s] of real property is "proper." ' " *Id.* at ¶ 18, quoting *St. Bernard Self-Storage, L.L.C.* at ¶ 15. In this case, however, the Board of Education has never challenged the propriety of Gallick's allocation

present evidence to the contrary.  The Board of Education argues that it met its burden by eliciting testimony from Gallick that established that the sale of the Livingston properties was not recent to the tax lien date of January 1, 2013.

{¶ 31} A sale is recent if it is made within a reasonable length of time of the tax lien date.  *Health Care REIT, Inc. v. Cuyahoga Cty. Bd. of Revision*, 140 Ohio St.3d 30, 2014-Ohio-2574, ¶ 22.  Consequently, one component of recency is the period of time that has elapsed between the sale date and the tax lien date.  *Id.*  Temporal proximity, however, is not the sole factor affecting recency.  *Emerson v. Erie Cty. Bd. of Revision*, 149 Ohio St.3d 148, 2017-Ohio-865, ¶ 19; *Worthington City School Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, ¶ 32.  The determination of whether a sale is recent requires consideration of all factors that would, by changing with the passage of time, affect the value of the property.  *Emerson* at ¶ 19; *Cummins Property Servs., L.L.C.*, 117 Ohio St.3d 516, 2008-Ohio-1473, at ¶ 35.  General developments in the marketplace, along with conditions more specific to the property, are relevant in determining recency.  *Cummins Property Servs., L.L.C.* at ¶ 35.  With regard to changes in market conditions, the speed of the changes is an important consideration.  "If the market is changing rapidly, then the selling price will not be the best evidence of true value for as long a period of time as when the market is not changing or changing very slowly."  *New Winchester Gardens v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 36, 44 (1997), *overruled in part on other grounds*, *Cummins Property Servs., L.L.C.* at ¶ 25.

{¶ 32} Here, the Board of Education contends that market conditions between the sale date (July 16, 2012) and the tax lien date (January 1, 2013) changed to such a degree as to invalidate the sale price as a measure of the Livingston properties' true value.  The Board of Education points to Gallick's testimony before the BOR as evidence of its contention.  During the April 10, 2014 BOR hearing, Gallick testified about the sale prices of properties located near the subject properties that he purchased in arm's-length transactions dating from April 2008 to the hearing date.  Gallick stated, "You can see -- Actually, the value of the properties went down.  I mean, the most -- the newer -- the most

---

of the sale price.  Consequently, the Board of Education has waived any argument concerning the propriety of the allocation.  *Emerson v. Erie Cty. Bd. of Revision*, 149 Ohio St.3d 148, 2017-Ohio-865, ¶ 20; *RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, ¶ 33.

recent properties I'm buying, I'm buying cheaper than the ones I bought in '08 and '09." (Tr. at 5.) Later in the hearing, Gallick represented, "And I'm telling you right now the value of properties have gone down in '11 and '12 and '13 from where they were in '10. * * * The market's down. I may contract for properties now that are even lower than 4,000 a unit." (Tr. at 20.)

{¶ 33} Thus, Gallick testified to a general downward trend in market prices from 2008 and 2014, and a drop in the market between 2010 and 2011/2012/2013. However, for our purposes, the relevant period is between July 16, 2012 and January 1, 2013. Gallick did not state that market conditions changed during that specific span of time, much less that the market changed so rapidly that a sale that occurred only five and one-half months prior to the tax lien date could no longer evince true value. Testimony of a downward trend in the market over seven years is not evidence that the market rapidly dropped between July 16, 2012 and January 1, 2013. Consequently, Gallick's testimony regarding the condition of the marketplace does not rebut the presumptions that the sale price met all the requirements of true value and best reflected the true value of the Livingston properties.

{¶ 34} Next, the Board of Education reverses course and eschews its contention that the Livingston properties' value dropped. It, instead, argues that rising tenancy levels and a "clean up" of the properties raised the value of the properties such that the July 16, 2012 sale cannot be considered recent to the January 1, 2013 tax lien date. However, again, the evidence the Board of Education relies on does not support its argument.

{¶ 35} At the BOR hearing, the Board of Education's attorney asked Gallick, "And how's your occupancy been since your purchase? Did it increase any?" (Tr. at 9.) Gallick answered, "It's increased a little." *Id.* Thus, Gallick testified that the number of tenants at the Livingston properties rose between the July 16, 2012 sale and the April 10, 2014 hearing, and not that the number of tenants rose between the July 16, 2012 sale and the January 1, 2013 tax lien date. Moreover, Gallick did not quantify the increase by stating how many more tenants he now has. Assuming that an increase in tenancy occurred between July 16, 2012 and January 1, 2013, the evidence regarding that increase is too meager to prove that the tenancy level affected the value of the properties between the two relevant dates. Consequently, evidence regarding the tenancy level does not rebut the

presumptions regarding true value that arose when Gallick adduced evidence of the July 2012 sale.

{¶ 36} With regard to the physical condition of the Livingston properties, the Board of Education's attorney asked Gallick, "Can you tell us a little about what condition [the properties] were in and whether any of them needed any improvements or repairs after your purchase[?]" (Tr. at 5.) Gallick responded that, "[b]y and large, they just needed cleaning up." *Id.* The attorney then asked, "So none of them required any kind of capital or structural updates or improvements?" (Tr. at 6.) Gallick replied, "No." *Id.*

{¶ 37} Pursuant to R.C. 5713.03(B), the sale price in an arm's-length transaction cannot be the true value of the property if, subsequent to the sale, "[a]n improvement is added to the property." With respect to buildings or structures, an "improvement" is "a permanent addition, enlargement, or alteration that, had it been constructed at the same time as the building or structure, would have been considered a part of the building or structure." R.C. 5701.02(D) (setting forth definitions of certain terms used in R.C. Chapter 57). Consequently, ameliorative measures such as replacing carpet and repainting do not constitute improvements that preclude a sale price from reflecting the true value of property. *Cattell v. Lake Cty. Bd. of Revision*, 11th Dist. No. 2009-L-161, 2010-Ohio-4426, ¶ 28-29.

{¶ 38} Here, nothing in Gallick's testimony or the other evidence explicates exactly what Gallick did to "clean up" the Livingston properties. It is clear, however, that Gallick did not go so far as to perform the type of improvements contemplated in R.C. 5713.03(B). Thus, that provision does not bar the use of the sale price to set the true value of the Livingston properties.

{¶ 39} Nevertheless, even if post-sale enhancements do not qualify as improvements, they could conceivably change a property sufficiently to affect the recency of a sale. Here, however, the Board of Education fails to direct us to any evidence that Gallick performed any "clean up" between July 16, 2012 and January 1, 2013 or, assuming a "clean up" occurred, the degree to which the properties were "cleaned up." Without more detail regarding the "clean up," the record lacks proof that the "clean up" was so significant that it altered the value of the properties. Thus, evidence related to the "clean up" does not

rebut the presumptions regarding true value that arose when Gallick presented evidence of the July 2012 sale.

{¶ 40} The Board of Education has only ever argued the lack of recency to rebut the presumptions at issue.  Nevertheless, in appeal Nos. 16AP-392 and 16AP-393, the trial court determined that the July 2012 sale did not qualify as an arm's-length transaction.  We, therefore, must consider whether the record contains evidence of the nature of the transaction that negates the presumptions regarding true value.

{¶ 41} Three factors are relevant in deciding whether a transaction occurred at arm's length:  (1) whether the sale was voluntary, i.e., without compulsion or duress; (2) whether the sale took place in an open market; and (3) whether the buyer and seller acted in their own self-interest.  *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, ¶ 47; *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23 (1989), syllabus.  Here, the trial court concluded that the July 2012 sale was not an arm's-length transaction because Gallick neither knew nor asked the seller's listing price before Gallick offered to buy the properties for $120,000.  We do not see how Gallick's failure to find out the list price prior to placing an offer results in the conclusion that that the sale was not at arm's length.  Gallick's decision to place an offer without knowing the asking price is neither evidence of compulsion or duress, nor evidence that Gallick betrayed his own self-interest.  Gallick testified that the prior owner placed the Livingston properties on the market, a realtor informed him that the properties were available for sale, he viewed the properties and decided to make an offer of $120,000, and the seller accepted his offer.  These facts establish that the July 2012 sale was an arm's-length transaction.  Consequently, evidence regarding the circumstances of the July 2012 sale do not rebut the presumptions regarding true value that arose when Gallick presented evidence of the sale.

{¶ 42} Where a rebuttable presumption exists, the party challenging the presumption must produce evidence that counterbalances the presumption or leaves the case in equipoise. *Bd. of Edn. of the Cleveland Mun. School Dist. v. Cuyahoga Cty. Bd. of Revision*, 107 Ohio St.3d 250, 2005-Ohio-6434, ¶ 15.  Here, the Board of Education failed to produce such evidence.  Consequently, the presumptions prevail, and thus, the July 2012 sale price constitutes the best evidence of the true value of the Livingston Avenue properties.  Because Gallick established $4,000 as the true value of each unit for the

purposes of tax year 2013, the trial court erred in affirming the BOR's decisions. Accordingly, we sustain Gallick's first assignment of error.

{¶ 43} By the remaining assignments of error, Gallick either advances alternative bases for finding error in the affirmance of the BOR's decisions or seeks a hearing before the trial court to present evidence regarding the true value of the Livingston properties. Given our ruling on Gallick's first assignment of error, his other assignments of error are moot, and consequently, we do not rule upon them.

{¶ 44} For the foregoing reasons, we dismiss appeal Nos. 15AP-233, 15AP-419, and 15AP-837.  We sustain the first assignment of error in appeal Nos. 15AP-182, 15AP-190, 15AP-564, 16AP-392, and 16AP-393, which renders moot the second through sixth assignments of error.  We reverse the judgments of the Franklin County Court of Common Pleas in appeal Nos. 15AP-182, 15AP-190, 15AP-564, 16AP-392, and 16AP-393.  We remand those five cases to the trial court so that it may certify to the Auditor the true value of $4,000 per tax parcel for units D, E, F, K, L, M, N, P, and Q of 1688 East Livingston Avenue and units A, B, C, N, P, and Q of 1704 East Livingston Avenue for tax year 2013.

Appeal Nos. 15AP-233, 15AP-419, and 15AP-837 dismissed;
appeal Nos. 15AP-182, 15AP-190, 15AP-564, 16AP-392, and 16AP-393
reversed and remanded with instructions.

SADLER and BRUNNER, JJ., concur.

_____